**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

**Kelly D. Jones, OSB No. 074217**
kellydonovanjones@gmail.com
Phone 503-847-4329

**Young Walgenkim, OSB No. 124900**
young@hansonwalgenkim.com
Phone 503-383-1496

Of Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **ELISHA SOLANO *et al.*** | Case No. 3:18-cv-01488-AC |
| Plaintiffs | **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| vs | |
| **THE KROGER CO.** dba **FRED MEYER** | |
| Defendant | ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

**Introduction** .........................................................................10

**Relevant Facts** ....................................................................11

      1.   Plaintiffs' purchases ..............................................11

      2.   Fred Meyer's UTPA violations ...........................11

      3.   Plaintiffs' ascertainable losses ..........................11

      4.   Unjust enrichment ...............................................12

      5.   Elder abuse ............................................................12

**Legal Standards** ..................................................................13

      1.   Motion to dismiss ................................................13

      2.   UTPA ......................................................................13

**Argument** ..............................................................................14

      1.   The TIA and principles of comity do not apply ..................14

          1.1.   The TIA does not apply because there is no challenge to the Bottle Bill .................14

          1.2.   The TIA does not apply because the bottle deposit is not a tax .............................17

**RESPONSE TO MOTION TO DISMISS** – Page 2 of 55

1.3.   Principles of comity do not apply ................ 20

2.   Plaintiffs have sufficiently pled all required elements
      of their claims ..................................................... 21

      2.1.   FRCP 9(b) is inapplicable ........................... 22

      2.2.   Even if FRCP 9(b) applied, plaintiffs'
             allegations are sufficient ............................ 27

      2.3.   Plaintiffs sufficiently allege
             ascertainable loss and causation
             under the UTPA .......................................... 34

             2.3.1   Plaintiffs plainly allege
                     a "diminished value"
                     ascertainable loss ........................... 38

             2.3.2   Plaintiffs also allege
                     an "illegal charge"
                     ascertainable loss ........................... 43

3.   The UTPA violations occurred in the sale
      of consumer goods ............................................. 47

4.   All of plaintiffs' counts are viable ....................... 49


Conclusion ......................................................... 53

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .................................................................. 13

*Bibiji Inderjit Kaur Puri v. Sopurkh Kaur Khalsa*
    674 F. App'x 679 (9th Cir. 2017) ................................................ 33

*Bidart Bros. v. Cal. Apple Comm'n*
    73 F.3d 925 (9th Cir. 1996) ............................................... 15,17,19

*Butler v. Me. Supreme Judicial Court*
    767 F. Supp. 17 (D. Me. 1991) ............................................. 15,19

*Cabral v. Caesars Entm't Corp.*
    2018 U.S. Dist. LEXIS 104129 (D. Nev. 2018) .......................... 15

*Cullen v. Investment Strategies, Inc.*
    139 Or. App. 119 (1996) ............................................................. 48

*Cumberland Farms v. Tax Assessor*
    116 F.3d 943 (1st Cir. 1997) ...................................................... 15

*Daniel N. Gordon, Prof'l Corp. v. Rosenblum*
    276 Or. App. 797 (2016) ............................................................ 13

*Denson v. Ron Tonkin Gran Turismo, Inc.*
    279 Or. 85 (1977) .............................................................. 13,50-51

*Direct Mktg. Ass'n v. Brohl*
    135 S. Ct. 1124 (2015) ............................................................... 16

*Donaldson v. Williams*
    2012 U.S. Dist. LEXIS 158642 (Dist. Or. 2012) .........................20

*Eminence Capital, LLC v. Aspeon, Inc.*
    316 F.3d 1048 (9th Cir. 2003) ....................................................53

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*
    651 F.3d 722 (7th Cir. 2011) ..................................................15,18

*Fair Assessment in Real Estate Ass'n v. McNary*
    454 U.S. 100 (1981) ..................................................................21

*Feitler v. Animation Celection, Inc.*
    170 Or. App. 702 (2000) ...........................................................35

*Hexom v. Or. DOT*
    177 F.3d 1134 (9th Cir. 1999) ...........................................15,17-19

*Ind. Waste Sys., Inc. v. County of Porter*
    787 F. Supp. 859 (N.D. Ind. 1992) .............................................15

*Kathrein v. City of Evans*
    752 F.3d 680 (7th Cir. 2014) ..................................................15,19

*Kearney v. Equilon Enters., LLC*
    65 F. Supp. 3d 1033 (D. Or. 2014) ...................................22-23,25

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) ...............................................22-23

*Lavis v. Bayless*
    233 F. Supp. 2d 1217 (D. Ariz. 2001) ........................................21

**RESPONSE TO MOTION TO DISMISS** – Page 5 of 55

*Levin v. Commerce Energy, Inc.*
    560 U.S. 413 (2010) ................................................................. 21

*Martin v. Cahill*
    90 Or. App. 332 (1988) ............................................................ 39

*MCI Commc'ns Servs. v. City of Eugene*
    2007 U.S. Dist. LEXIS 75602 (D. Or. 2007) .............................. 15

*McKie v. Sears Prot. Co.*
    2011 U.S. Dist. LEXIS 47967 (D. Or. 2011) .......................... 24-25

*Mendoza v. Lithia Motors, Inc.*
    2017 U.S. Dist. LEXIS 4716 (D. Or. 2017) ................. 26-27,49,51

*Paul v. Providence Health Sys., Or.*
    237 Or. App. 584 (2010) .......................................................... 35

*Pearson v. Philip Morris Inc.*
    358 Or. 88 (2015) .........................................26-27,35,37-38,42-43

*Rathgeber v. James Hemenway, Inc.*
    335 Or. 404 (2003) ................................................................... 32

*Raudebaugh v. Action Pest Control, Inc.*
    59 Or. App. 166 (1982) ........................................................ 13,27

*Salameh v. Tarsadia Hotel*
    726 F.3d 1124 (9th Cir. 2013) .................................................. 27

*Sanders v. Francis*
    277 Or. 593 (1977) ................................................................... 24

**RESPONSE TO MOTION TO DISMISS** – Page 6 of 55

*Scharfstein v. BP W. Coast Prods., LLC*
    292 Or. App. 69 (2018) .........................................................44-46


*Scott v. Western Int'l Surplus Sales, Inc.*
    267 Or. 512 (1973) ..................................................................39-42


*Silva v. Unique Bev. Co., LLC*
    2017 U.S. Dist. LEXIS 93625 (D. Or. 2017) .....................23,25-26


*Simonsen v. Sandy River Auto LLC*
    290 Or. App. 80 (2018) .........................................................39,41


*Sipe v. Amerada Hess Corp.*
    689 F.2d 396 (3d Cir. 1982) ..................................................15,19


*Shroyer v. New Cingular Wireless Servs., Inc.*
    622 F.3d 1035 (9th Cir. 2010) ...................................................13


*Starr v. Baca*
    652 F.3d 1202 (9th Cir. 2011) ...................................................33


*State ex rel. Redden v. Disc. Fabrics, Inc.*
    289 Or. 375 (1980) ............................................................24-26,29


*Tri-West Constr. Co. v. Hernandez*
    43 Or. App. 961 (1979) .............................................................45


*Union Pac. R.R. Co. v. Public Util. Comm'n*
    899 F.2d 854 (9th Cir. 1990) .....................................................18


*United States v. Oregon*
    2011 U.S. Dist. LEXIS 1107 (Dr. Or. 2011) ..............................21

**RESPONSE TO MOTION TO DISMISS** – Page 7 of 55

*Valero Terrestrial Corp. v. Caffrey*
    205 F.3d 130 (4th Cir. 2000) .................................................. 15,19

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ..................................................... 24

*Weigel v. Ron Tonkin Chevrolet Co.*
    298 Or. 127 (1984) ............................................................ 35,39-40

*Wilson v. Hewlett–Packard Co.*
    668 F.3d 1136 (9th Cir. 2012) ..................................................... 13

*Willis v. Debt Care, USA, Inc.*
    2011 U.S. Dist. LEXIS 153008 (D. Or. 2011) ............................ 25

*Wright v. McClain*
    835 F.2d 143 (6th Cir. 1987) .................................................. 15,19

*Wolverton v. Stanwood*
    278 Ore. 709 (Or. 1977) ............................................................. 24

**Federal Statutes**

28 U.S.C. § 1341............................................................................ 14

**Federal Rules**

FRCP 8 .......................................................................................... 21,33

FRCP 9 ..................................................................... 21-23,25,27,29,32-33

FRCP 12 ......................................................................................... 13,21

**RESPONSE TO MOTION TO DISMISS** – Page 8 of 55

**Oregon Statutes**

ORS 124  .......................................................................... 12,42

ORS 459A.700 *et seq.* ............................................... 11,14,16,46

ORS 646.605  ....................................................................29,47-48

ORS 646.608  ................................................................32,37,44,47-51

ORS 646.638  ...............................................................28-29,40

## INTRODUCTION

Plaintiffs' claims are straightforward.

As a result of Fred Meyer's acts and omissions, plaintiffs were charged 10 cents more for beverage products that were supposed to be redeemable for 10 cents, but instead plaintiffs ended up with products that were in fact not redeemable for 10 cents.

In typical cases, the short and plain statement above showing that plaintiffs are entitled to relief under the UTPA would be more than sufficient to avoid objection at this early stage. But this is not a typical case. This is a putative class action, where plaintiffs seek relief on behalf of thousands of other similarly situated Fred Meyer customers.

Fred Meyer has filed a lengthy motion to dismiss, attempting to depict plaintiffs' claims as some type of a Gordian knot composed of supposed state tax jurisdictional issues, heightened common law fraud pleading standards, and a supposed whole new area of retail sales, which Fred Meyer claims is not actually the sale of goods at all but rather a bottle deposit transaction beyond the broad reach, liberal interpretive standard, and remedial purpose of the UTPA.

Plaintiffs now file this response to cut the knot of Fred Meyer's illusory arguments and to establish their entitlement to relief based on the straightforward allegations set forth in their complaint.

## RELEVANT FACTS

### 1.    Plaintiffs' purchases

All of the named plaintiffs purchased the same brand of orange juice products from an Oregon Fred Meyer store, and all of them were charged 10 cents on top of the regular purchase price of the products. Doc. 5 at ¶¶ 1, 4, 5, 8, 9-14, 16.

### 2.    Fred Meyer's UTPA violations

Fred Meyer's acts and omissions directly or indirectly implied that the products plaintiffs purchased could be redeemed for the amount of the 10-cent charge; however, the products in fact could not be redeemed for 10 cents, or for any amount at all. *Id.* at ¶¶ 1, 7, 8-15, 17-25, 35; *see also* ORS 459A.702(1) & (2) ("ORS 459A.700 to 459A.740 [the Bottle Bill] apply to any individual, separate, sealed glass, metal or plastic bottle or can, *except for cartons*, foil pouches and drink boxes[.]" (emphasis added)).

### 3.    Plaintiffs' ascertainable losses

As a result of Fred Meyer's actions and omissions, Fred Meyer sold, and plaintiffs purchased, goods that were worth exactly 10 cents less than what was represented. Each plaintiff suffered an ascertainable loss of money or property in the amount of 10 cents. Doc. 5 at ¶¶ 26, 35.

4.      **Unjust enrichment**

Fred Meyer should not be able to retain the 10 cents per product it wrongfully collected from plaintiffs as a result of its unjust actions and omissions. Plaintiffs are entitled to restitution based on Fred Meyer's unjust enrichment as alleged throughout their complaint. *Id*. at ¶ 36.

5.      **Elder abuse**

Plaintiff Arlene Johnston was over age 65 when Fred Meyer wrongfully caused her a loss of 10 cents. *Id*. at ¶¶ 5, 28, 37. As alleged, Fred Meyer permitted its stores to commit financial elder abuse by acting or failing to act under circumstances in which a reasonable person should have known of the financial abuse. *Id*. As a result, Ms. Johnston and the elder abuse subclass she seeks to represent are entitled to fair compensation for actual damages, maximum statutory damages, and reimbursed fees and costs under ORS 124.100(2). *Id*.

## LEGAL STANDARDS

### 1.    Motion to dismiss

A motion to dismiss under FRCP 12(b)(6) may be granted when there is no cognizable legal theory to support a claim or when a complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A claim is plausible on its face if the factual allegations in the complaint allow a court to reasonably infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint's factual allegations, a court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the nonmoving party. *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

### 2.    UTPA

As a consumer protection statute, the UTPA is to be interpreted liberally in favor of consumers. *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 90 n.4 (1977). "'The general policy of the UTPA is to discourage deceptive trade practices and to provide a viable remedy for consumers who are damaged by such conduct.'" *Daniel N. Gordon, Prof'l Corp. v. Rosenblum*, 276 Or. App. 797, 814 (2016) (quoting *Raudebaugh v. Action Pest Control, Inc.*, 59 Or. App. 166, 171 (1982)).

## ARGUMENT

### 1.    The TIA and principles of comity do not apply

Fred Meyer's jurisdictional arguments fail because the Tax Injunction Act (TIA) does not apply. Plaintiffs do not challenge the Bottle Bill, ORS 459A.700, *et seq.* in any way, but rather the charges Fred Meyer added to beverage products that were not redeemable under the statute. Even if plaintiffs were challenging the Bottle Bill somehow, the TIA would not apply because the bottle deposit is not a tax under controlling Ninth Circuit law. Principles of comity also do not apply here for the same reason the TIA does not apply: plaintiffs do not challenge the Bottle Bill, and even if they did, the deposit fee is not a tax and in no way relates to any state tax affairs. This Court has jurisdiction to hear plaintiffs' claims.

### 1.1    *The TIA does not apply because there is no challenge to the Bottle Bill*

Fred Meyer's attempt to hide behind the TIA fails because plaintiffs in no way challenge or "attack" the Bottle Bill or the legislature's assessment of the deposit fee allowed under it. Under the TIA, 28 U.S.C. § 1341, "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law."

Clearly the TIA does not apply because plaintiffs do not bring a claim to "enjoin, suspend or restrain" the assessment of a tax under state law.

The numerous cases cited by Fred Meyer lend no support to its argument because the plaintiffs in those cases all actually challenged the assessment of a tax or fee under a state law, county ordinance, or court order.[1]

In this case, Fred Meyer's illegal actions in charging a deposit fee for beverage containers that are not even redeemable under the Bottle

---

[1] *Hexom v. Or. DOT*, 177 F.3d 1134 (9th Cir. 1999) (challenging state statute that imposed fee for issuance of disabled person parking permit); *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925 (9th Cir. 1996) (challenging fee assessed against apple growers under California's "Food Code"); *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722 (7th Cir. 2011) (challenging Illinois statutes that required casinos to pay money into a state fund); *Wright v. McClain*, 835 F.2d 143 (6th Cir. 1987) (challenging mandatory monthly payment to supervision and victim's compensation funds required under Tenn. Code Ann. § 40-28-201); *Ind. Waste Sys., Inc. v. County of Porter*, 787 F. Supp. 859 (N.D. Ind. 1992) (challenging fee assessed against landfill company provided for under county ordinance); *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130 (4th Cir. 2000) (challenging Solid Waste Assessment Fee imposed under W. Va. Code § 22-16-4(a)); *Kathrein v. City of Evans*, 752 F.3d 680 (7th Cir. 2014) (challenging Evanston's Affordable Housing Demolition Tax); *Sipe v. Amerada Hess Corp.*, 689 F.2d 396 (3d Cir. 1982) (challenging state withholding of wage taxes); *Butler v. Me. Supreme Judicial Court*, 767 F. Supp. 17 (D. Me. 1991) (challenging Maine Supreme Judicial Court order requiring assessment of nonrefundable jury fee); *Cumberland Farms v. Tax Assessor*, 116 F.3d 943 (1st Cir. 1997) (challenging milk-handling surcharge imposed by the state); *MCI Commc'ns Servs. v. City of Eugene*, No. 07-6059-AA, 2007 U.S. Dist. LEXIS 75602 (D. Or. Oct. 9, 2007) (challenging city ordinance requiring annual registration fee); *Cabral v. Caesars Entm't Corp.*, No. 2:17-cv-02841-APG-VCF, 2018 U.S. Dist. LEXIS 104129 (D. Nev. June 11, 2018) (challenging internet access charges assessed in resort fee under county lodging tax); *Lavis v. Bayless*, 233 F. Supp. 2d 1217 (D. Ariz. 2001) (challenging fees imposed on registered lobbyists under Arizona's Clean Elections Act).

Bill is what plaintiffs challenge, not the assessment of a deposit fee under the statute. Fred Meyer charges customers 10 cents each time Florida's Natural juice cartons are purchased, presumably, to recoup the customer's eventual redemption of the 10 cents. But these cartons have no redemptive value under the law because they are unequivocally not covered under the Bottle Bill's provisions. No matter how Fred Meyer tries to obfuscate the issue with legal sophistry, it cannot argue away the text of the law: "ORS 459A.700 to 459A.740 [the Bottle Bill] apply to any individual, separate, sealed glass, metal or plastic bottle or can, *except for cartons*, foil pouches and drink boxes[.]" ORS 459A.702(1) & (2) (emphasis added). The fee Fred Meyer charged, therefore, is not in any way related to the Bottle Bill. It is a fee without support in the law.

Without applicability of the law, the fee is just that—a fee illegally charged by Fred Meyer, not a bottle deposit under the statute. It is beyond doubt that plaintiffs' claims would not "enjoin, suspend or restrain" the collection of any tax, even if the bottle deposit were a tax. The TIA is simply not implicated in this case and the Court should not decline jurisdiction simply because Fred Meyer asserts that plaintiffs' complaint references a state "tax" statute.[2]

---

[2] Even when a claim "inhibits" assessment, levy and collection under an actual state tax statute, which plaintiffs' claims clearly do not, the US Supreme Court has refused to dismiss under the TIA. *See, e.g., Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1125, 1131-33 (2015).

### 1.2    *The TIA does not apply because the bottle deposit is not a tax*

Fred Meyer attempts to deflect the real issue in this case by framing plaintiffs' claim as a "roundabout challenge" to and "an attack" on the "tax scheme" crafted by the Oregon legislature through Oregon's Bottle Bill. Doc. 24 at p. 11.

Fred Meyer injects terms such as "indirect," "subsidize," and "forcing payments" to bolster its position that the (supposed) bottle deposit fee provided for under the Bottle Bill is really a tax in disguise. The Court does not even need to reach this narrower issue because the TIA is inapplicable on its face in this case. Regardless, as explained below, the TIA is also not applicable to this case because the bottle deposit, even if it *were* being challenged, is not a tax based on controlling case law.

To support its tax argument, Fred Meyer applies the three-part test outlined in *Bidart Bros. v. California Apple Commission*, 73 F.3d 925, 931 (9th Cir. 1996), for determining whether a fee is a tax, and asserts that the bottle deposit fee meets all elements.

However, the determination of whether a fee is a tax is not clear cut in most cases, and thus the Ninth Circuit in *Hexom v. Oregon DOT* emphasized that "the cases, *Bidart* among them, take a practical and sensible approach. They do not apply a set of rigid rules or elements and then reach a mechanical conclusion." 177 F.3d 1134, 1137 (9th Cir.

**RESPONSE TO MOTION TO DISMISS** – Page 17 of 55

1999). Indeed, in its motion, Fred Meyer also propounds that the "commonsense" approach be taken in determining whether a fee is a tax.

But *Hexom* and the commonsense approach ultimately obliterate Fred Meyer's argument that the bottle deposit fee is a tax because commonsense dictates that for any fee, levy, or exaction, etc., to be a tax, its primary purpose must be revenue raising in nature:

> We have had occasion to distinguish mere fees from taxes. We touched on that distinction in *Union Pac. R.R. Co. v. Public Util. Comm'n*, 899 F.2d 854 (9th Cir. 1990). In that case, we were faced with a levy that was placed upon railroad corporations. It was contended that the levy constituted a discriminatory tax. We said: "The Oregon levy is designed to recoup the costs of a regulatory program from members of the industry regulated, *rather than to raise general revenues* . . . ." We [therefore] determined that the levy was not a tax. That commonsense approach militates for a determination that the $4 fee in question here is not a tax[.]

*Id.* at 1136 (emphasis added; citations omitted); *see Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 729 (7th Cir. 2011) (holding that casino exactions at issue were a tax because "'the … fees are imposed for revenue-raising purposes, a characteristic of any tax.'" (emphasis added; citations omitted)).

As Fred Meyer admits throughout its motion, the primary "purpose" of the Bottle Bill, and the deposit fee provided under it, is to reduce the state's problem of "litter," not raise revenue. Doc. 24 at p. 13 (and elsewhere).

**RESPONSE TO MOTION TO DISMISS** – Page 18 of 55

In reversing the district court decision dismissing a complaint for TIA preclusion, in *Hexom* the Ninth Circuit succinctly summed up the pertinent analysis for why the fee in question was not a tax:

> Whether we consider the gestalt of the placard fee or consider it by using the separate elements or parts outlined in *Bidart*, we must reach the same conclusion. The fee is not designed to raise revenue, and enjoining its collection will not "threaten the flow of central revenues" of Oregon's government. *Bidart*, 73 F.3d at 930. It is not at all "critical to general state functions." *Id*. It is, instead, designed to pay for the costs of a special program. In fine, it is not a tax, and this action is not precluded by the TIA. The district court did have jurisdiction.

177 F.3d at 1139. [3]

The same considerations examined by the *Hexom* court hold true in this case. The bottle deposit fee provided under the Bottle Bill is not

---

[3] In the myriad of other cases Fred Meyer cites to for support, where the fees in question were determined to be a tax, the fees, unlike the bottle deposit fee in this case, were designed for the purpose of raising revenue and deposited into various funds: *Valero*, 205 F.3d 130 ("to determine whether a particular charge is a 'fee' or a 'tax,' the general inquiry is to assess whether the charge is for revenue raising purposes"; "revenue collected" "deposited into" cost assistance fund); *Kathrein*, 752 F.3d 680 (exaction used to raise revenue and deposited into Affordable Housing Fund clearly a tax); *Sipe*, 689 F.2d 396 (tax withholding deposited into state unemployment fund was for purpose of state revenue collection); *Butler*, 767 F. Supp. at 19 (court-mandated jury fee deposited into Maine's general fund was a tax because "there is wide agreement among . . . circuits [that] [a]ssessments which are imposed primarily for revenue-raising purposes are 'taxes'"); *Wright*, 835 F.2d 143 (state-mandated fees to supervision and victims' funds were a "tax" because they were levied for revenue-raising purposes).

**RESPONSE TO MOTION TO DISMISS** – Page 19 of 55

designed to raise revenue;[4] enjoining its collection (though plaintiffs do not do that here) would not threaten revenues of Oregon's government; and the bottle deposit fee is not critical to general state functions.

The fee provided for under the Bottle Bill is not a tax. Thus, the TIA would not preclude jurisdiction, even if plaintiffs were somehow challenging the Bottle Bill—which clearly, they are not.

### 1.3    Principles of comity do not apply

As a last-ditch effort, Fred Meyer offers up the doctrine of comity because, it says, it is "broader" than the TIA. Like the TIA, however, this doctrine has no place in this case for the same reason the TIA does not: plaintiffs do not in any way challenge the Bottle Bill, and even if they were, the deposit fee provided under it is not a tax and does not impact any state tax scheme. As explained previously, plaintiffs challenge Fred Meyer's assessment of a fee on beverage cartons that are not redeemable for that fee.

As with the TIA, none of the cases Fred Meyer cited actually support its principles of comity argument because each involved an actual challenge to a state or county tax or tax system. *Donaldson v. Williams*, No. 2:12-cv-80-SU, 2012 U.S. Dist. LEXIS 158642, at *25

---

[4] The only "revenue" raising implicated by plaintiffs' claims are the fees collected by Fred Meyer, which, because the amounts it added to the purchase price of the products are not redeemable, end up in Fred Meyer's coffers instead of being paid back out as refunds.

**RESPONSE TO MOTION TO DISMISS** – Page 20 of 55

(Dist. Or. Sept. 6, 2012) (challenging "State and County defendants' conduct in administering the tax assessment, lien, and foreclosure system"); *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) (challenging discriminatory state taxation system); *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981) (challenging assessment of county property taxes); *United States v. Oregon*, No. 10-528-HA, 2011 U.S. Dist. LEXIS 1107 (Dr. Or. Jan. 4, 2011) (challenging imposition of Oregon State tax on certain property).

This is not a case involving the province of state taxation, no matter how many tax-related terms Fred Meyer uses to try to make it appear so. The doctrine of comity is irrelevant to this case.

**2.    Plaintiffs have sufficiently pled all required elements of their claims**

Fred Meyer asserts various theories of why plaintiffs' claims are insufficiently pled, mostly in regard to causation and damages, but also as to other elements. These arguments are not persuasive and are contradicted by the actual facts alleged in plaintiffs' complaint or by applicable case law. Fred Meyer's motion to dismiss plaintiffs' complaint under FRCP 8, 9(b), and 12(b)(6) should be denied because all of the required elements of plaintiffs' claims are sufficiently pled.

### 2.1.    FRCP 9(b) is inapplicable

Fred Meyer argues that plaintiffs' claims should be dismissed because "they are subject to the heightened pleading requirements of Rule 9(b)" and plaintiffs' allegations fail to meet the requisite level of specificity. Doc. 24 at p. 23. *Inter alia*, in support of its FRCP 9(b) argument, Fred Meyer relies on the Ninth Circuit's decision in *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009), and an in-district opinion, *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033 (D. Or. 2014) (Hernandez, J.).

In *Kearney*, the court found that the plaintiffs "alleged a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis for their claim" and thus needed to allege their claims with particularity under Rule 9(b). 65 F. Supp. 3d at 1043 (citing *Kearns*, 567 F.3d at 1125). The court reached this conclusion because the plaintiffs alleged that:

> (1) a *representation* (the advertisement), (2) was false (the advertisement stated Plaintiffs would receive a free lift ticket, and they did not), (3) the misrepresentation was material (Plaintiffs did not receive the very thing they allegedly entered into the transaction for), (4) the subclass representatives did not know of the restrictive conditions at the time of performance, (5) they *relied on this representation* and had a right to do so, and (6) they suffered an injury as a result.

*Id*. (emphases added).

Guided by the Ninth Circuit's holding in *Kearns*, Judge Hernandez noted that "to determine whether fraud has been pled to state a course of action, the court must look to state law". *Id.* at 1041 (citing *Kearns*, 567 F.3d at 1126). In *Kearney* the plaintiffs alleged violations of numerous states' laws, not just Oregon's UTPA. As recognized by the court, it was clear that the plaintiffs actually alleged the elements of common law fraud, including their reliance upon the fraudulent representations; thus, the complaint as a whole sounded in fraud and triggered the heightened FRCP 9(b) specificity.

In *Kearns*, besides it being factually inapposite to this case, the court was interpreting the elements of California state law claims – thus it is not on point. *See* 567 F.3d at 1127 ("The requirement in Rule 9(b) of the Federal Rules of Civil Procedure that allegations of fraud be pleaded with particularity applies to claims which are made in federal court under the CLRA and UCL.").

Three years after deciding *Kearney*, Judge Hernandez revisited whether FRCP 9(b) applied to a putative class action complaint asserting UTPA claims only under Oregon's statute in *Silva v. Unique Beverage Co.*, No. 3:17-cv-00391-HZ, 2017 U.S. Dist. LEXIS 93625 (D. Or. June 15, 2017). The court began its analysis by acknowledging that indeed "Rule 9(b) applies not just to claims expressly designated as 'fraud,' but also to claims 'grounded in fraud' because the claim relies

exclusively on a 'unified course of fraudulent conduct,' or when fraud is a 'necessary element' of a claim." 2017 U.S. Dist. LEXIS 93625, at *36 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). Then the court applied the reasoning from a previous Oregon district court case, *McKie v. Sears Prot. Co.*, No. CV 10-1531-PK, 2011 U.S. Dist. LEXIS 47967, at *33 (D. Or. Feb. 22, 2011), to the facts before it.

In *McKie*, that court looked to an Oregon Court of Appeals case, *State ex rel. Redden v. Disc. Fabrics, Inc.*, 289 Or. 375, 377 (1980), finding that in *Redden*:

> the Oregon Supreme Court performed a general comparison between the elements of UTPA claims and common law fraud claims, noting two important differences. *Id.* at 1038 (quoting *Wolverton v. Stanwood*, 278 Ore. 709, 565 P.2d 755, 757 (Or. 1977)) ("[t]he elements of common law fraud are distinct and separate from the elements of a cause of action under the Unlawful Trade Practices Act, and a violation of the Act is much more easily shown.") (internal quotations omitted). First, the Court observed that, unlike fraud claims, UTPA claims based on non-disclosure in particular do not require proof of reliance. *Redden*, 615 P.2d at 1039 (citing *Sanders v. Francis*, 277 Ore. 593, 561 P.2d 1003, 1006 (1977)). Second, the Court found that the scienter requirement for all UTPA claims was different than for common law fraud claims: where UTPA claims require only negligent misrepresentation, fraud claims require something more.

2011 U.S. Dist. LEXIS 47967, at *32-33. Ultimately, in *McKie* the court found that "[i]n light of the differences between the elements of common law fraud and UTPA claims, the McKies' UTPA claim cannot be

considered tantamount to a fraud claim. The scienter for both UTPA allegations differs from the scienter requirement for fraud. Further, reliance is not a required element of the McKies' UTPA non-disclosure allegation, while reliance is required for fraud claims. Consequently, the McKies' UTPA claim need not meet the pleading requirements of Rule 9(b)." *Id*. at *35-36.

In adopting the sound reasoning of *McKie* in *Silva*, Judge Hernandez reached an opposite conclusion from his earlier decision in *Kearney*, finding that "[a]lthough Plaintiff's UTPA claim contains fraud-like allegations, an Oregon UTPA claim and an Oregon common law fraud claim remain distinct and as in *McKie*, Rule 9(b) does not apply." 2017 U.S. Dist. LEXIS 93625, at *39.

The key takeaways from *Redden*, *McKie*, and *Silva* are (1) the required elements for a UTPA claim are simply disparate from, and less onerous than, a common law fraud claim, and (2) if FRCP 9(b) can still apply at all to a UTPA claim after the Oregon Supreme Court's analysis in *Redden* it would be only when (a) a plaintiff actually alleges common law fraud or a unified course of fraudulent misrepresentations *and* (b) reliance is a required element of the plaintiff's UTPA claim. *See also Willis v. Debt Care, USA, Inc.*, No. 3:11-cv-430-ST, 2011 U.S. Dist. LEXIS 153008, at *30 (D. Or. Oct. 24, 2011) (finding that "[a] UTPA claim need not meet the pleading requirements of FRCP 9(b)").

**RESPONSE TO MOTION TO DISMISS** – Page 25 of 55

Here, plaintiffs do not allege a "unified course of fraudulent conduct" but instead allege very specific violations of the UTPA (and unjust enrichment), not alleging just misrepresentations, but also omissions and causing the likelihood of confusion or misunderstanding, relating to Fred Meyer's sale of consumer goods. Nor do plaintiffs allege that they suffered ascertainable loss under a "refund of the purchase price" theory, so reliance is not a causational element that plaintiffs need to allege or prove. *See, e.g.*, *Pearson v. Philip Morris Inc.*, 358 Or. 88, 144 (2015) (Walters, J., concurring) (clarifying that even when a plaintiff alleges a violation of the UTPA based upon an express misrepresentation, reliance is not a necessary element of the claim *unless* the plaintiff is seeking a refund of the purchase price theory of ascertainable loss); *Mendoza v. Lithia Motors, Inc.*, No. 6:16-cv-01264-AA, 2017 U.S. Dist. LEXIS 4716, at *11 (D. Or. Jan. 11, 2017) (finding that plaintiff did not need to plead and prove reliance in a failure to disclose UTPA case); *Silva*, 2017 U.S. Dist. LEXIS 93625, at *30-31 (noting that Oregon law only requires reliance to be a required element of a UTPA claim when the claim is based on a misrepresentation *and* the plaintiff is seeking a refund of the purchase price of the product).

Plaintiffs cannot be forced to plead with particularity the elements of fraud, such as the scienter and reliance elements, when these elements simply do not apply to plaintiffs' actual claims,

consistent with the Oregon legislature's intent in adopting the UTPA. *See Raudebaugh*, 59 Or. App. at 171 ("Had the legislature intended that a consumer prove all the elements of common[-]law fraud in order to recover damages, it would have been unnecessary to create a cause of action by statute.").

### 2.2 Even if FRCP 9(b) applied, plaintiffs' allegations are sufficient

To bring a private cause of action under the UTPA, "a plaintiff is required to show that '(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice.'" *Mendoza*, 2017 U.S. Dist. LEXIS 4716, at *8 (quoting *Pearson*, 358 Or. at 127 (majority opinion)).

Even if the heightened FRCP 9(b) pleading requirement were to apply to plaintiffs' claims, plaintiffs have sufficiently met that standard. Plaintiffs' complaint identifies "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotations and citation omitted).

Plaintiffs allege that Fred Meyer (the who), after January 1, 2018 (the when), at the registers and on its receipts at its Oregon stores (the where), misrepresented, failed to disclose, or caused confusion about a

specific brand of orange juice products it sold to plaintiffs (and the putative class) (the who), by directly or indirectly representing that, and causing the likelihood of confusion about, the 10-cent charge it added to the regular price of the products could be recouped when the empty product containers were redeemed (the how), when in fact these specific products were not redeemable for any amount (the why). Doc. 5 at ¶¶ 7-26. Plaintiffs state with particularity how Fred Meyer's conduct violated each alleged violation of the UTPA (*id.* at ¶¶ 17-25, 35) and how plaintiffs suffered an ascertainable loss as a result of the violations (the damages) (*id.* at ¶¶ 26, 35). Some of the named plaintiffs' actual receipts are even pictured in the body of the complaint, although this level of physical evidence is not required at this stage. *Id.* at ¶¶ 9-14.

Fred Meyer also argues that plaintiffs fail to adequately allege that its UTPA violations were willful as required by ORS 646.638(1) "because there are no facts suggesting that the purported imposition of the 10-cent deposit was purposeful as opposed to the alternative explanation of a possible mistake. Beyond conclusory labels and assertions there is not a single factual allegation in the Amended Complaint to suggest that Fred Meyer 'knew or should have known' that it was not in compliance with the Bottle Bill." Doc. 24 at p. 39.

Fred Meyer is incorrect.

First, unless and until this case is certified as a class action, plaintiffs need only prove a "willful" violation of the UTPA to succeed on their claim. ORS 646.638(1). Even after certification, plaintiffs and the putative class members still need only prove a willful violation to recover actual damages at trial. ORS 646.638(1), (8). Only if this case is certified as a class action, and only if plaintiffs and the putative class members seek class statutory damages at trial, must plaintiffs prove a "reckless or knowing" violation. ORS 646.638(8). Second, the allegations of the required UTPA scienter is more than sufficient at this stage, even under FRCP 9(b), because "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally" under the rule, and plaintiffs do more than that in their complaint.

"Willful" means Fred Meyer knew or should have known its conduct violated the UTPA. ORS 646.605(10); *see also Redden*, 289 Or. 375 at 385 ("Conduct which is 'wil[l]ful' and in violation of the Unlawful Trade Practices Act requires no more than proof of ordinary negligence by a defendant in not knowing, when it should have known, that a representation made by him was not true.").

Plaintiffs state with sufficient particularity, especially at this early stage in the litigation, that Fred Meyer's UTPA violations "were willful and reckless because Fred Meyer knew it could not charge customers . . . 10-cents on exempt beverages and that the exempt

beverage containers could not in fact be redeemed for 10 cents, but intentionally chose to add on the 10-cent charge anyway. Fred Meyer recklessly continued to violate [the UTPA] by adding on and collecting the 10-cent charge on exempt beverages, even after receiving repeated complaints from plaintiffs and other customers." Doc. 5 at ¶ 25; *see also id.* at ¶35 ("As alleged in this complaint, Fred Meyer willfully and recklessly violated Oregon's Unlawful Trade Practices Act[.]"); *id.* at ¶ 1 ("Fred Meyer understood that the exempt beverages were not redeemable but continued to overcharge its customers anyway.").

A reasonable juror may well decide that Fred Meyer, "a national food retailer with over $120 billion in annual revenue," knows or should know that Oregon law prohibits it from misleading and overcharging customers. *Id.* A reasonable juror may also well determine that a sophisticated retail sales chain of Fred Meyer's size and sales volume "understood that the exempt beverages were not redeemable but continued to overcharge its customers anyway." *Id.* On its face, plaintiffs' complaint states a plausible claim that Fred Meyer willfully violated the UTPA, and assuming this case is certified as a class action for statutory damages, a reasonable juror may well use these facts, and additional facts learned through discovery, to determine that Fred Meyer's conduct was reckless or knowing.

For example, only discovery will reveal whether Fred Meyer has written procedures with respect to its fees or deposit charges it adds onto the products it sells. Assuming Fred Meyer has written procedures, a reasonable juror may well determine that Fred Meyer's UTPA violation was knowing. If Fred Meyer has no written procedures, a reasonable juror may well determine its lack of written procedures makes its violations reckless.

Fred Meyer tries to make hay out of the fact that "[p]laintiffs allege only that they purchased a beverage from mostly unidentified Fred Meyer stores in Oregon" and that "it is unclear when during the year the 25 individual Plaintiffs made their purchases." Doc. 24 at p. 25. Fred Meyer also incorrectly asserts that it is "unclear how the purported misrepresentations regarding the 10-cent deposit were made or advertised to each Plaintiff (e.g., on the shelves, on the products, in newspapers or online)." *Id*. Fred Meyer also claims that "[p]laintiffs have merely generally allege[d] that Fred Meyer made misrepresentations about a general subject matter—here, the 10-cent deposit—without specifically identifying the statement at issue or what the 25 Plaintiffs purportedly saw." *Id*. at pp. 32-33. Fred Meyer goes on to assert that "[t]here is no allegation in the Amended Complaint regarding how Florida's Natural orange juice was advertised in Fred Meyer, how it was presented in its stores, or what was said about the 10-cent deposit.

Based on these vague and missing allegations, there is no way for Fred Meyer to identify and respond to the challenged representations." *Id*. at p. 33.

In addition to the fact that at least some of the specific Fred Meyer stores and dates of purchase are listed in the receipts pictured in the complaint, this level of finite detail is simply not relevant at the pleading stage, even if FRCP 9(b) were applicable. It is clear from plaintiffs' complaint that the alleged unlawful conduct at issue was widespread across Fred Meyer's Oregon stores. *See* Doc. 5 at ¶ 15 ("Private investigation has revealed that Oregon Fred Meyer store locations in Forest Grove, Tualatin, Tigard, Wilsonville, Keizer, Salem, Albany, Springfield, and Eugene all . . . .). Although it is possible Fred Meyer also falsely represented the 10-cent additional fee on its shelves as well, it is enough that plaintiffs allege that Fred Meyer did so at its registers and on its receipts at the time of the sale. *See Rathgeber v. James Hemenway, Inc.*, 335 Or. 404, 412 (2003) ("An actionable representation under the UTPA may be express or implied."); ORS 646.608(2) ("A representation under [ORS 646.608(1)] may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact.").

Moreover, Fred Meyer knows where its Oregon stores are located, the date range of when all of the relevant sales and violations occurred,

**RESPONSE TO MOTION TO DISMISS** – Page 32 of 55

and that its registers and receipts indicated that plaintiffs were charged an additional 10-cent charge, when in fact the products were not redeemable for 10 cents, to be more than adequately informed of the necessary facts comprising plaintiffs' claims and Fred Meyer's alleged violations of the law. Even direct "[a]llegations of fraud based on information and belief may suffice [under Rule 9(b)] as to matters peculiarly within the opposing party's knowledge,[5] so long as the allegations are accompanied by a statement of the facts upon which the belief is founded." *Bibiji Inderjit Kaur Puri v. Sopurkh Kaur Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017).

Given the detail of plaintiffs' allegations, it is purely tactical and disingenuous for Fred Meyer to claim that "there is no way for [it] to identify and respond to the challenged representations." Doc. 24 at p. 33. Plaintiffs' complaint contains more than "sufficient allegations of underlying facts to give fair notice and to enable [Fred Meyer] to defend itself effectively" and that "plausibly suggest an entitlement to relief, such that it is not unfair to require [Fred Meyer] to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Plaintiffs' complaint clearly satisfies FRCP

---

[5] It is also highly likely that Fred Meyer knows not only exactly which of its Oregon stores (if not all of them) were unlawfully charging an additional 10 cents for these nonredeemable products, but exactly how many of these products it sold in the relevant time period, and thus the total amount it collected for these unlawful charges.

**RESPONSE TO MOTION TO DISMISS** – Page 33 of 55

8 and also the heightened pleading standards of 9(b) (if it applies here—which it does not).

Fred Meyer also argues, erroneously, that "[i]t is unclear what Plaintiffs saw with respect to those advertisements in making their purchase decisions, whether any Plaintiff bothered to seek a refund, and what, if anything, each Plaintiff relied on." Doc. 24 at p. 25. This is a common theme of Fred Meyer's motion—trying to escape liability (and eventual class certification) by attempting to convince the Court that reliance is a required element of plaintiffs' claims. But as mentioned *supra*, and discussed in more detail *infra*, these arguments are a red herring, because the subjective reasons for plaintiffs' purchases, whether they actually sought to redeem the unredeemable products, and reliance in general, are wholly irrelevant because, *inter alia*, plaintiffs do not allege a refund of the purchase price theory of ascertainable loss, and so reliance is not a required element that plaintiffs need to plead or prove.

### 2.3. Plaintiffs sufficiently allege ascertainable loss and causation under the UTPA

Much of Fred Meyer's arguments about the sufficiency of plaintiffs' complaint focus on damages and causation under the UTPA. "'Ascertainable loss' under the UTPA is amorphous. Any loss will satisfy [the] requirement so long as it is 'capable of being discovered, observed,

**RESPONSE TO MOTION TO DISMISS** – Page 34 of 55

or established.'" *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 712 (2000) (citation omitted). The ascertainable loss requirement "should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 136 (1984). Ascertainable loss can be as simple as the difference in value between a product as represented and as actually received by a consumer. *See Paul v. Providence Health Sys., Or.*, 237 Or. App. 584 (2010).

As far as causation, plaintiffs must merely show that their ascertainable loss was caused by Fred Meyer's alleged acts and omissions in violation of the UTPA. Despite Fred Meyer's arguments to the contrary, "[t]he UTPA does not require that a consumer's purchase be the 'result of' an unlawful trade practice; it requires that a consumer's ascertainable loss be the 'result of' an unlawful trade practice." *Pearson*, 358 Or. at 144 (Walters, J., concurring).

In *Pearson*, the Oregon Supreme Court clarified that reliance is not always necessary to establish that a plaintiff's ascertainable loss was caused by a defendant's unlawful conduct. *Id.* at 127 (majority opinion). "[R]eliance is not, in and of itself, an element of a UTPA claim" though it may be "a natural theory to establish the causation of the loss (i.e., the 'injury' in a UTPA claim) for a purchaser *seeking a refund* based

**RESPONSE TO MOTION TO DISMISS** – Page 35 of 55

on having purchased a product believing it had a represented characteristic that it did not have." *Id.* at 126 (emphasis added). Even in the case of a UTPA claim based purely on an express misrepresentation, it "is not the nature of the misrepresentation . . . that requires proof of reliance. It is the misrepresentation coupled with plaintiffs' theory for having suffered a loss in the form of the purchase price because they did not get what they believed they were buying. In this case, reliance inheres in the combination." *Id.*

But in regard to an express misrepresentation coupled with a "diminished value" theory of ascertainable loss,

> [t]hat does not mean however a plaintiff who *can* show a difference between the price paid for a misrepresented product and the market value of that product must, like a plaintiff seeking a refund of the purchase price, also show that he or she made a subjective choice to purchase the product because of the misrepresented characteristic.

*Id.* at 143 (Walters, J., concurring) (emphasis in original).

Here, plaintiffs have more than sufficiently alleged that they suffered an ascertainable loss as a result of Fred Meyer's acts and omissions in violation of the UTPA:

> As a result of Fred Meyer's violations of Oregon's Unlawful Trade. Practices Act as alleged above, plaintiffs and thousands of other Oregon customers suffered ascertainable losses in the amount of the 10-cent charges that Fred Meyer unlawfully added on to the exempt beverages and collected from them. But for Fred Meyer's unlawful acts and omissions plaintiffs and the putative class should, and would, have paid 10 cent less for the same exempt beverages at Fred Meyer, but instead ended up

with goods that were worth 10 cents less because the empty exempt beverage containers were not in fact redeemable for 10 cents.

Doc. 5 at ¶ 26. Plaintiffs also allege that:

Fred Meyer willfully and recklessly violated Oregon's Unlawful Trade Practices Act, including ORS 646.608(1)(b), (e), (i), (j), (k), (s), and (t), causing ascertainable losses to plaintiffs and the putative class members. As a result of Fred Meyer's false and misleading representations, omissions, and the illegal 10 cent charge it added onto the beverages, plaintiffs and the putative class members paid 10 cents more for the same beverages that they could have purchased for 10 cents less, and ended up with goods that were worth 10 cents less because the empty beverage containers could not in fact be redeemed for 10 cents.

*Id.* at ¶ 35.

Fred Meyer attempts to muddy the waters by playing coy with plaintiffs' allegations and mischaracterizing the applicable case law regarding ascertainable loss and causation under the UTPA. But in reality, the facts as alleged by plaintiffs present a very straightforward example of ascertainable loss of "diminished value," and also fit the bill of an "illegal charge." As explained below, neither of these types of ascertainable loss require that plaintiffs demonstrate subjective reliance on the representation, act, or omission that violates the UTPA.

Oregon law is clear that a showing of reliance is only necessary *if* plaintiffs' UTPA claim (1) is based on express representation *and* (2) alleges ascertainable loss based on a refund of the purchase price theory. *Pearson*, 358 Or. at 126. In this case Fred Meyer violated the UTPA not

**RESPONSE TO MOTION TO DISMISS** – Page 37 of 55

just by affirmative and implied representations but through omissions and the failure to disclose information and objectively causing the likelihood of confusion or misunderstanding about the beverage products it sold to plaintiffs and the putative class. *See id*. at ¶¶ 17, 18, 19-23, 24, 26, 31, 35. Thus, reliance is not required to prove causation in this case, as the first requirement that necessitates proof of reliance is not triggered, because affirmative misrepresentations are not the only way in which Fred Meyer is alleged to have violated the UTPA.

In any event, the second requirement is also clearly not satisfied because, despite Fred Meyer's superfluous analysis of this theory, plaintiffs do not allege a "refund of the purchase price" ascertainable loss; therefore, they need not allege or prove reliance.[6]

### 2.3.1 Plaintiffs plainly allege a "diminished value" ascertainable loss

Ascertainable loss under a diminished value theory is established if the value of the product a plaintiff received was less than the value of the product as represented. *See Pearson*, 358 Or. at 118-19 (majority

---

[6] Certainly, plaintiffs *could* allege that they relied on Fred Meyer's false representations that the products were redeemable for 10 cents, as no rational consumer, including plaintiffs, would voluntarily pay Fred Meyer an extra 10 cents if they knew that the products were in fact not redeemable yet Fred Meyer was unlawfully charging them this fee anyway. But plaintiffs do not need to allege and prove reliance, and neither reliance nor "refund of the purchase price" loss is a proper fit with the facts of this case.

opinion). Also, the precise measure of the ascertainable loss need not even be alleged or proven if the plaintiff seeks statutory damages of $200 rather than actual damages in the amount of the loss. *See Martin v. Cahill*, 90 Or. App. 332, 335-36 (1988); *see also Simonsen v. Sandy River Auto LLC*, 290 Or. App. 80, 91 (2018) (citing *Scott v. W. Int'l Surplus Sales, Inc.*, 267 Or. 512, 515 (1973)).

Two Oregon Supreme Court cases are instructive on this topic. In *Scott v. Western International Surplus Sales, Inc.*, the plaintiff purchased a tent that was advertised as having a window and some other features. What the plaintiff actually received was a tent without a window and the other features. 267 Or. at 514. The court found that although the difference in value of the two tents (one with these features and one without) is not readily determinable, the plaintiff nonetheless suffered an ascertainable loss of diminished value. *Id*. at 515-16.

*Weigel v. Ron Tonkin Chevrolet Co.* dealt with a plaintiff who purchased a car that was represented as new but was in fact not new. 298 Or. at 129. The jury awarded the plaintiff statutory damages of $200 and punitive damages of $10,000. *Id*. The defendant argued on appeal that there was no evidence of ascertainable loss. The Oregon Supreme Court reiterated that "[w]hat the legislature meant by an 'ascertainable loss of money or property' is not free from doubt." *Id*. at 133. The court noted that the "difference between the price paid and some objective

measure of market value" is not the only measure of ascertainable loss. *Id*. Assessing the legislative purposes of the UTPA, the court commented that private losses "should be viewed broadly" and held that ascertainable loss did not require an objective loss in market value. *Id*. at 136-37. Ultimately the court found that the testimony to the jury regarding a general but unquantified loss in value sufficed as "some ascertainable loss of money or property" sufficient for a jury to award statutory damages of $200. *Id*. at 137.

*Scott* and *Weigel* establish that one way UTPA plaintiffs can prove they suffered an "ascertainable loss of money or property" under ORS 646.638(1) is by a showing that they purchased a product that was represented to have a feature of value but that did not actually have that feature and, thus, was less valuable. The diminished value may be proved to the factfinder by a variety of methods. As in *Scott*, the diminished value loss could be inferred from the nature of the feature, whereby the factfinder could infer that a good with certain features was worth more than a good without the features. 267 Or. at 515-16. Or as in *Weigel*, a plaintiff could introduce opinion evidence whereby the jury could infer from testimony by witnesses that the good purchased was less valuable than the good that was represented. 298 Or. at 137.

In this case, the diminished value loss is even more readily ascertainable and more easily calculated than in *Scott* or *Weigel*.

Plaintiffs paid 10 cents extra for each product as a result of Fred Meyer's acts and omissions implying that the products had the feature, characteristic, and benefit of being redeemable for 10 cents. In fact, what plaintiffs actually purchased from Fred Meyer were products that did not have the feature, characteristic, and benefit for 10 cents, or any amount. Simply put, plaintiffs ended up with a good that was worth exactly 10 cents less than what was represented. In this diminished value case, ascertainable loss is far from amorphous: the diminished value between the product as represented and the product actually received is very clear and easily calculable.

Fred Meyer also argues that plaintiffs fail to allege a viable ascertainable loss because "[t]here is no assertion that Plaintiffs could have purchased the beverage for cheaper elsewhere (with or without the 10-cent deposit)" and "because Plaintiffs nowhere allege that they attempted to return the containers to recover the ten cents or otherwise attempted to obtain a refund of the 10-cent deposit." Doc. 24 at p. 30. The arguments are not cogent and unsupported in the law. As *Scott* makes clear, the factfinder can assess diminished value loss under the UTPA on inference alone. *See also Simonsen*, 290 Or. App. at 91-92 (upholding jury verdict finding ascertainable loss and statutory damages even though a vehicle with defects had the same market value as the vehicle's purchase price). Here, it does not take a big logical leap

**RESPONSE TO MOTION TO DISMISS** – Page 41 of 55

to determine that a good that costs 10 cents more but is redeemable for the 10 cents, or that costs 10 cents less because it is not redeemable, has more value than the same product that costs 10 cents more but is not redeemable for 10 cents or any amount at all. The difference is 10 cents. Once they understood that the products were actually not redeemable, the plaintiffs did not need to go shopping at other stores or do complex math to figure out that they lost 10 cents of value with their purchases. And neither will the factfinder.

Fred Meyer's argument that plaintiffs have not suffered ascertainable loss because they don't allege that they attempted to redeem the empty containers for a refund is also unavailing and specious. First, this would be an effort in futility because the statute is clear that the product cartons plaintiffs purchased are not redeemable. Second, ascertainable loss occurred at the time plaintiffs purchased the products. *See Pearson*, 358 Or. at 123 n.20 ("In other words, as in *Scott*, the plaintiff suffered an out-of-pocket loss at the moment of purchase based on the price paid and the actual value of the item."). When plaintiffs paid the extra 10 cents, they either received a beverage product with a redeemable container or they did not—here they did not; as a result, they sustained an ascertainable loss.[7]

---

[7] Fred Meyer's argument that plaintiff Arlene Johnston's ORS 124.110 elder abuse claim and plaintiffs' equitable unjust enrichment claim also fails for this reason is likewise unavailing. *See* Doc. 24 at p. 31.

**RESPONSE TO MOTION TO DISMISS** – Page 42 of 55

Again, because plaintiffs can show a diminished value between what they received and what Fred Meyer represented, directly or indirectly, their subjective intent (reliance) and what they intended to do with the product (*redeem or not redeem*) are irrelevant. Justice Walter's concurrence in *Pearson* summarizes this principle well:

> That understanding of the UTPA comports with its purpose. People buy products after weighing numerous characteristics, benefits, and qualities. They may make their final decisions based on more than one of a product's features, or they may not be able to articulate why, in the end, they laid their money down. But when people make purchases, they nevertheless expect to receive products that have all of the represented features, not only those features that were subjectively determinative in the purchasing decision. When a plaintiff establishes that he or she purchased a product that was not as represented and that he or she suffered diminished value as a result, the purchaser demonstrates ascertainable loss sufficient to permit a claim under the UTPA.

358 Or. at 144 (Walters, J., concurring).

Plaintiffs more than sufficiently allege a very straightforward diminished value theory of ascertainable loss which is well-rooted in the case law, regardless of Fred Meyer's attempt to muddy this issue.

### 2.3.2 Plaintiffs also allege an "illegal charge" ascertainable loss

Although it is unnecessary because plaintiffs (and ultimately the putative class members) only need to assert a single ascertainable loss theory in order to prevail on their UTPA claim, the facts alleged by plaintiffs support an "illegal charge" theory of ascertainable loss as well

as a "diminished value" theory. Under the illegal charge theory, plaintiffs need only allege that the fee charged to plaintiffs was illegal, *i.e.*, the law did not allow it. *See, e.g.*, *Scharfstein v. BP W. Coast Prods., LLC*, 292 Or. App. 69, 89 (2018).

Fred Meyer argues that an illegal charge loss is not applicable to plaintiffs' claim here because "[t]his action does not involve the UTPA provision at issue, which relates to violations of the Gasoline Price Advertising Rule authorized by the Attorney General's administrative rule." Doc. 24 at p. 30. According to Fred Meyer, the Attorney General must have adopted a rule prohibiting the charge or there must be a separate pinpointed UTPA provision prohibiting the exact type of charge; otherwise the illegal charge theory of loss is not applicable. This is incorrect.

In *Scharfstein*, the plaintiffs alleged that "BP illegally charged class members an unlawful 35-cent debit card fee and, therefore, [p]laintiff and the class are entitled to recover statutory damages of $200 per class member." *Id*. at 88. The defendant in that case, BP, did happen to violate a gas pricing advertising regulation that the Attorney General adopted; thus, the UTPA violation was based on ORS 646.608(1)(u). But the fact that the illegal fee was based upon the violation of a pricing regulation is not determinative to the application of the illegal charge theory. The rationale underlying this ascertainable loss theory

**RESPONSE TO MOTION TO DISMISS** – Page 44 of 55

articulated by the Oregon Court of Appeals predates *Scharfstein*. In *Scharfstein*, the court cited to *Tri-West Construction Co. v. Hernandez*, one of the seminal cases outlining the rationale for this theory. 43 Or. App. 961, 972 (1979). The rationale of this illegal fee theory stands, *inter alia*, for the proposition that "'proof that a party justifiably relied on a representation is not necessary when the representation involves a matter about which the party making it is legally required to inform the other.'" *Scharfstein*, 292 Or. App. at 89 (quoting *Tri-W.*, 43 Or. App. at 972). In *Tri-West*, the plaintiffs' UTPA claims were based in part on the defendant's failure to properly disclose certain information required by the federal Truth in Lending Act (TILA) regarding the consumer's rescission rights, although the plaintiffs did not bring any claims directly under the TILA itself. *Id*. Therefore, Fred Meyer's contention that in order to prove an illegal charge theory the charge at issue must be separately illegal under an Attorney General regulation or pinpoint a UTPA pricing subsection is incorrect. The source of the law that is not complied with, or does not apply, is irrelevant. What is important to the illegal charge theory is that the defendant charged the plaintiff a fee despite the fact that the fee was in fact not authorized or allowed by the law. That is what Fred Meyer has done in this case.

The other key component of the illegal charge theory is that in addition to not requiring proof of reliance, as in a diminished value loss,

the loss itself does not require any independent valuation or refund of the purchase price analysis—the ascertainable loss is the payment of the fee itself.

In this case, plaintiffs allege that Fred Meyer added a charge to the products they purchased and directly or indirectly implied that the charge was required by law (ORS 459A.700, *et seq*.), but that was not true. In fact, the products were not covered under the Bottle Bill, were not redeemable, and plaintiffs could not, and cannot, recoup the 10-cent charge. Moreover, like in *Scharfstein*, the 10-cent charge here was a mandatory part of the sales transaction—plaintiffs did not have an option to not pay the added charges if they wished to purchase the goods. A reasonable consumer cannot be expected to know that Fred Meyer was misrepresenting that the law required an additional 10-cent charge where no law actually mandated the charge or provided that the products would be redeemable for the amount of the charge. Fred Meyer's argument against application of the illegal charge theory here is that because plaintiffs' loss is not exactly point-by-point identical to the facts in *Scharfstein*, the theory does not apply. But it is the rationale behind the illegal charge theory, not the exact facts of *Scharfstein*, that is important. *Scharfstein* is just one articulation and application of the theory to facts similar, but not identical, to the case at hand. It is not meant to be the only one. Consistent with the illegal charge theory of

loss, Fred Meyer charged plaintiffs and the putative class members 10 cents per beverage product that was in fact not redeemable, thereby causing ascertainable loss in the amount of 10 cents, without any need to prove reliance or any diminished value.

### 3.    The UTPA violations occurred in the sale of consumer goods

The UTPA's private cause of action applies to any person or business that "in the course of a business, vocation, or occupation" commits an unlawful trade practice as defined in the statute. ORS 646.608(1). Many, but not all, of the specifically prohibited trade practices set forth in ORS 646.608 specify that the violation must relate to real estate, goods, or services.[8] In turn, the statute defines "[r]eal estate, goods or services" as "those that are or may be obtained primarily for personal, family or household purposes." ORS 646.605(6).

Fred Meyer argues that all of plaintiffs' UTPA counts must fail because its acts and omissions are completely outside the broad ambit of the UTPA since "charges like the 10-cent 'deposit' at issue in this action are not representations regarding 'goods' under the UTPA". Doc. 24 at p. 35. This argument is fallacious, unsupported by the text of the statute, and not in accordance with the liberal interpretative standard and remedial purpose of the UTPA. To the contrary, this case deals with

---

[8] Those that don't include this phrase include two of plaintiffs' UTPA counts: ORS 646.608(1)(j) & (k).

the exact type of conduct that the UTPA seeks to enjoin and provides a private cause of action to seek relief for.

Fred Meyer attempts to sow confusion between the purpose of the underlying transaction (the sale of consumer goods) and the "use or employment of a method, act or practice declared unlawful under ORS 646.608." The prohibited practice is the way in which Fred Meyer is alleged to have violated the UTPA. Depending on the specific subsection implicated, and the facts, sometimes the violation takes the form of a misrepresentation, an omission, causing confusion, a failure to disclose, etc. The prohibited practice must have occurred in the context of a sale or advertisement of a good that was obtained for a personal, family, or household purpose (or involving real estate, services, or, post–2012 amendment, loans or extensions of credit). But the form that the violation takes does need to be a "good."

Fred Meyer cites to an Oregon Court of Appeals case, *Cullen v. Investment Strategies, Inc.*, 139 Or. App. 119, 127 (1996), and some other Oregon state court cases in support of its argument. But these cases are inapposite and lend no support to Fred Meyer's argument. These cases are about whether the defendants' alleged conduct and services regarding loans or credit transactions were covered by the UTPA, before it was specifically amended in March 2012 to encompass "loans or extensions of credit." *See* ORS 646.605(6). This is not a case concerning

loans of money, and in any event, these cases are not of any relevance after the 2012 amendment.

Plaintiffs' UTPA claim (and each count) clearly arises out of Fred Meyer's sale of consumer goods in the regular course of its business as a large consumer goods retailer. In this case, the goods sold to plaintiffs by Fred Meyer are orange juice beverages. As a part of the sale of these goods, Fred Meyer misrepresented indirectly or directly, failed to disclose information about, and caused confusion about the price, true cost, source of the charges added onto, characteristics, and benefits of the goods it sold to plaintiffs and a putative class. As such, Fred Meyer's conduct clearly falls under the UTPA and the specific subsections of the UTPA that plaintiffs allege it violated.

### 4.    All of plaintiffs' UTPA counts are viable

Hoping that "this is a deposit not the sale of goods thus not covered by the UTPA" argument somehow succeeds, Fred Meyer specifically targets plaintiffs' ORS 646.608(1)(j) and (k) UTPA counts, as those counts do not include the "real estate, good, or services" language.

In regard to plaintiffs' subsection (j) count, Fred Meyer argues that "[t]his theory does not fit subjection (j) because it relates entirely to a redemption amount as opposed to any 'price reduction' on the beverage." Doc. 24 at p. 37. Fred Meyer cites to *Mendoza v. Lithia Motors, Inc.*, No. 6:16-cv-01264-AA, 2018 U.S. Dist. LEXIS 50193 (D. Or.

Mar. 27, 2018), and *Denson,* 279 Or. 85, in support. These cases are distinguishable from the facts presented here and do not support Fred Meyer's argument.

The distinction becomes apparent upon closer examination of the unique and inapposite facts in *Denson*. In *Denson*, the plaintiff brought his car to the defendant for repairs. The defendant represented that the regular price for the repair was $X, but quoted the plaintiff an offering price of $Y. When the repairs were complete, the actual price came out to $Z. 279 Or. at 87-88. "Plaintiffs [did] not contend that the normal price for such repairs was misrepresented." *Id.* at 91. The *Denson* court's finding was based on the fact that "the actual price was different from the offering price." *Id.* The reason that the court found that ORS 646.608(1)(j) was inapplicable to the offering price was that the offering price was only a promise and not a "representation of fact" as required by the language in ORS 646.608(1)(j).

In this case, however, plaintiffs allege a misrepresentation of the normal or regular price. At least at the time of plaintiffs' purchases, Fred Meyer charged a normal or regular price of $3.39 or $3.59 for ($3.29 + $0.10 for refund value; $3.49 + $0.10 for refund value). *See* Doc. 5 at ¶¶ 9-14. Fred Meyer represented a normal or regular price reduction of 10 cents that would be available upon return of the empty containers, which was false. The prices advertised and charged to plaintiffs were

not merely a quote or promise as in *Denson*; rather, these were the prices actually charged to plaintiffs. Moreover, *Denson*'s "regular price vs. offering price" distinction only applies to misrepresentations of the amounts of price reduction. That distinction does not apply to the existence of or reasons for a price reduction because representations concerning the existence of and reasons for price reductions are representations of fact. Plaintiffs in this case have alleged a misrepresentation of the existence of and reasons for price reductions, so the holding in *Denson* (and *Mendoza*) is inapposite. Plaintiffs have sufficiently pled their ORS 646.608(1)(j) count against Fred Meyer.

Fred Meyer argues that plaintiffs' (j) count fails because they "do not allege that defendants misrepresented any fact relating to credit, or that they misrepresented the type of transactions entered into by plaintiffs" and because it "cannot merely relate to non-credit-related details of a 'transaction' as that would swallow whole the other subsections. Because Plaintiffs make no allegations regarding 'credit,' the claims fail." Doc. 24 at p. 38 (citing to *Mendoza.*, 2017 U.S. Dist. LEXIS 4716, at *15-16).

ORS 646.608(1)(k) provides that a defendant that "[m]akes false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred" violates that subsection. In *Mendoza*, the court does appear to agree that the "or the

nature of the transaction or obligation incurred" must relate to a credit transaction, despite the fact that "credit" does not come before the word "transaction" or "obligation" as it does before the word "availability." Nonetheless, plaintiffs argue that a facial reading of this provision supports that "the nature of the transaction or obligation incurred" need not be tied to credit.

But even if the entire subsection requires a relation to credit, plaintiffs see no reason, especially given the liberal interpretive standard of the UTPA, why Fred Meyer "falsely and misleadingly representing[,] at its registers and on its receipts, that the total price of the exempt beverages would be reduced by 10 cents when the exempt beverage containers were redeemed, and failing to disclose that the exempt beverage containers could not be redeemed in the amount of the 10-cent charge," would not equate to false representations about the alleged deposit charge because this charge is akin to a store "credit," whereby plaintiffs were promised that if they paid an extra 10 cents they would be able to redeem the empty product containers for 10 cents.

## CONCLUSION

For all these reasons, Fred Meyer's motion to dismiss should be denied. However, if for some reason the Court finds that plaintiffs' claims require more specificity at this pre-discovery phase, then plaintiffs should be granted leave to amend their complaint accordingly. *See Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003).

February 18, 2019

RESPECTFULLY FILED,

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 10,594 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

February 18, 2019

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

**RESPONSE TO MOTION TO DISMISS** – Page 54 of 55

## CERTIFICATE OF SERVICE

I certify that I caused this document to be served on all parties to this action via email by filing through the CM/ECF system.

February 18, 2019

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000