UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ELISHA SOLANO, DONNA JUEL, RICK
VENEMAN, PAUL RUGGLES, MICHAEL
TEEGARDEN, CAROLYN ESPINOZA,
WILLIAM ORELAN, KRYSTYNA
MILLER, KATHLEEN ZACH, LINDSY
ROBY, ERIC LEE, ANAND SATHYARAJ,
THOMAS AHLES, HOLLY SIMONE,
ARLENE JOHNSTON, SCOTT PENNETT,
ELIZABETH GOTHAM, LINDA
MADSEN, LIANE JONES, DENISE
CONROY, MELISSA BUCKHANNON,
CLAYTON BISHOP, ROBERT
ANDERSON, BRIAN GLEASON, KINDRA
TAPPAN, individually and on behalf of other
customers,

                Plaintiffs,

    v.

THE KROGER CO., doing business as Fred
Meyer,

                Defendant.

Case No. 3:18-cv-01488-AC

AMENDED FINDINGS AND
RECOMMENDATION

_____

ACOSTA, Magistrate Judge:

Page 1 – FINDINGS AND RECOMMENDATION

Plaintiffs Elisha Solano, Donna Juel, Rick Veneman, Paul Ruggles, Michael Teegarden, Carolyn Espinoza, William Orelan, Krystyna Miller, Kathleen Zach, Lindsy Roby, Eric Lee, Anand Sathyaraj, Thomas Ahles, Holly Simone, Arlene Johnston, Scott Pennett, Elizabeth Gotham, Linda Madsen, Liane Jones, Denise Conroy, Melissa Buckhannon, Clayton Bishop, Robert Anderson, Brian Gleason, and Kindra Tappan (collectively "Plaintiffs"), individually and on behalf of other customers, bring this putative class action against Defendant The Kroger Co., ("Fred Meyer") for alleged violations of Oregon's Unfair Trade Practices Act ("UTPA"), Oregon Revised Statutes ("O.R.S.") § 646.608, elder abuse under O.R.S. § 646.605 *et seq*, and unjust enrichment stemming from Fred Meyer's imposition of a ten-cent bottle deposit on beverages exempt from Oregon's Bottle Bill.   Presently pending before the court is Fred Meyer's Motion to Dismiss Plaintiffs' Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(1) and 12(b)(6).   For the reasons that follow, Fred Meyer's motion should be granted in part and denied in part, and Plaintiffs should be given leave to amend.

*Background*

I.   Oregon's Bottle Bill

The Beverage Container Act (the "Bottle Bill") encourages[1] consumer recycling by assigning a redemption value to the containers of certain beverages sold in Oregon, the value of which must be paid to any individual who returns the empty beverage containers to a qualifying

---

[1] This portion of the court's decision is taken from the court's November 20, 2019 Findings and Recommendation in a similar case, *Gilberto v. Walgreen Co.*, Case No. 3:18-cv-01003-AC ("*Gilberto* F&R").   (*Gilberto* F&R at 5, ECF No. 30).   The parties did not file objections relating to the court's discussion of the Bottle Bill.   And, for the reasons stated in the *Gilberto* F&R, the court takes judicial notice of a document entitled "Oregon's Bottle Bill Frequently Asked Questions" ("Bottle Bill FAQ") published by the Oregon Liquor Control Commission ("OLCC") and posted on its website and revised in February 2020.   *See generally* oregon.gov/olcc/docs/ bottle_bill_faqs.pdf.

retailer or distribution center. *See generally* OR. REV. STAT. § 459A.700, *et seq*. The redemption value of all beverage containers subject to the Bottle Bill is ten cents, but not all beverage containers sold in Oregon are eligible for a refund under the Bottle Bill. 2017 Or. Laws 0008. Whether a refund is available depends on the characteristics of the container and the beverage packaged therein. Specifically, "any individual, separate, sealed glass, metal or plastic bottle or can" containing three liters or less of water, flavored water, mineral water, soda water, soft drinks, beer, or other malt beverages is subject to the Bottle Bill. OR. REV. STAT. § 459A.702(1). Beverages packaged in cartons, foil pouches, or drink boxes are expressly exempt from the requirements of the Bottle Bill, regardless of container size or beverage type. *Id.*

On January 1, 2018, an amendment expanded the universe of beverages subject to the Bottle Bill to include "[a]ny beverage" that is "more than or equal to four fluid ounces and less than or equal to one and one-half fluid liters." OR. REV. STAT. § 459A.702(2)(a). This includes all individually and separately packaged beverages of conforming size sealed in glass, metal, or plastic bottles or cans. Only distilled liquor, wine, dairy or plant-based milks, infant formula, and other beverage exemptions as determined by the OLCC are excluded. OR. REV. STAT. § 459A.702(2)(b). The 2018 Amendments did not discard or otherwise revise the exemption of cartons, foil pouches, or drink boxes from the refund requirements of the Bottle Bill.

The beverage container redemption system mandated by the Bottle Bill is largely implemented through a series of deposits. Generally, distributors charge retailers a ten-cent deposit on all beverages subject to the Bottle Bill upon delivery to a retail store. Retailers then pass that deposit on to customers, charging a ten-cent deposit per beverage in addition to the purchase price. (Bottle Bill FAQ, at 1.) Retailers must then accept empty beverage containers returned by consumers and must refund ten cents per container. (*Id.*) In turn, retailers return the

Page 3 – FINDINGS AND RECOMMENDATION

beverage containers to the distributors, which must likewise refund the retailers ten cents per container.  (*Id.*)  Distributors and retailers are required to report their beverage sales and return data to the Oregon Beverage Recycling Coooperative.  (*Id.* at 9.)  The state does not receive any proceeds from container returns.  (*Id.* at 10.)  "The primary legislative purpose of the [B]ottle [B]ill is to cause bottlers of carbonated soft drinks and brewers to package their products for distribution in Oregon in returnable, multiple-use deposit bottles toward the goals of reducing litter and solid waste in Oregon."  *Am. Can Co. v. Or. Liquor Control Comm'n*, 15 Or. App. 618, 623 (1973).

## II.    The Amended Complaint

The following allegations appear in the Amended Class Action Complaint and are taken as true for purposes of this motion.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).  Plaintiffs are Oregon residents and Fred Meyer customers who purchased exempt beverages for personal consumption at Oregon Fred Meyer locations.   (Am. Compl. ¶ 4, ECF No. 5.)  Defendant The Kroger Co., an Ohio corporation, is a national food retailer with over $120 billion in annual revenue and owns Fred Meyer.  (*Id.* ¶ 4.)  Many beverages sold by Fred Meyer, including most beverages sold in sealed glass, metal, and plastic bottles and cans, require a ten-cent deposit under the Bottle Bill.  (*Id.* ¶ 7.)  After consuming these beverages, customers may return the empty containers for a ten-cent refund.  (*Id.*)  However, certain beverages are exempt from the ten-cent deposit, including certain products sold in cartons, drink boxes, and foil pouches. (*Id.*)  Exempt beverages cannot be returned for a ten-cent refund.  (*Id.*)

After January 1, 2018, each Plaintiff purchased an exempt beverage from Fred Meyer, yet Fred Meyer collected a ten-cent additional charge for each exempt beverage it sold to each Plaintiff.  (*Id.* ¶ 8.)  Plaintiffs Ruggles, Simone, Zach, Anderson, Conroy, and Teegarden have

Page 4 – FINDINGS AND RECOMMENDATION

included receipts from their purchases of Florida's Natural orange juice at Fred Meyer reflecting a ten-cent charge, identified as "BOTTLE DEPOS." (*Id.* ¶¶ 9-14.) Plaintiffs assert the exempt beverages they purchased (and those of putative class members) from Fred Meyer are consumer goods purchased for personal, family, or household purposes under O.R.S. § 646.605(6)(a). (*Id.* ¶ 16.)

Private investigation revealed that Oregon Fred Meyer store locations in Forest Grove, Tualatin, Tigard, Wilsonville, Keizer, Salem, Albany, Springfield, and Eugene all regularly misrepresent the actual cost of certain beverages by charging customers an additional ten cents for exempt beverages, and by failing to disclose to customers that the exempt beverage containers cannot be returned for a ten-cent refund. (*Id.* ¶ 15.)

Plaintiffs filed this putative class action lawsuit, alleging Fred Meyer's conduct violates various provisions of Oregon's UTPA by "causing the likelihood of confusion and misunderstanding" about whether the additional the ten cents it charges for exempt beverages is mandated by Oregon law, and whether the ten-cent charge is redeemable when the containers are returned. (*Id.* ¶¶ 17-25.) Plaintiffs contend that Fred Meyer's actions were willful and reckless because it knew that the exempt beverage containers were not redeemable and continued to charge the extra ten-cents anyway. (*Id.* ¶¶ 24-25.) Plaintiffs also seek relief under a common law theory of unjust enrichment and elder financial abuse. (*Id.* ¶¶ 36-37.) Plaintiffs seek certification of a class action. (*Id.* ¶ 27.) Plaintiffs seek statutory damages of $200 per violation, attorney fees, and punitive damages. (*Id.* ¶ 35.)

III.   Related Litigation

Plaintiffs' counsel has filed a similar putative class action complaint in which defendant Walgreen Co. is alleged to have violated various provisions of Oregon's UTPA for charging bottle

deposits for exempt beverage containers that are not redeemable under the Bottle Bill. *Gilberto v. Walgreen Co.*, Case No. 3:18-cv-01003-AC. In a November 20, 2019 Findings and Recommendation ("*Gilberto* F&R"), the court dismissed several of Gilberto's claims with leave to amend and, on April 16, 2020, District Judge Marco A. Hernandez adopted the courts' findings in part. *Gilberto v. Walgreen Co.*, 2020 WL 1890538, at *1 (D. Or. Apr. 16, 2020).

IV.    Current Motion

Fred Meyer moves to dismiss Plaintiffs' action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), contending that this court lacks jurisdiction to hear their claim because Plaintiffs are challenging the "tax" levied by the Bottle Bill. Fred Meyer also moves to dismiss this action pursuant to Rule 12(b)(6), contending that Plaintiffs have failed to allege causation and damages under any theory, and that their UTPA claims fail to allege unlawful trade practices or willful conduct.

*Legal Standards*

I.    Motion to Dismiss Rule 12(b)(1)

The federal district courts are courts of limited jurisdiction. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005). The party asserting jurisdiction bears the burden of establishing that it exists in a given case. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178,182–183 (1936)). Under Rule 12(b)(1), a defendant may move to dismiss a claim for lack of subject matter jurisdiction. When a federal court determines it lacks subject matter jurisdiction, it must dismiss the complaint in its entirety. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Defendant's jurisdictional challenge is a "facial" attack on the Amended Complaint's allegations, which means that Defendant "asserts that the allegations contained in [the] complaint

Page 6 – FINDINGS AND RECOMMENDATION

are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss." *MCI Commc'ns Servs., Inc. v. City of Eugene, Or.*, 359 F. App'x. 692, 697 (9th Cir. 2009); *see also Kokkonen*, 511 U.S. at 377 ("Federal courts are of limited jurisdiction. . . . It is to be presumed that a cause [of action] lies outside of this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

II.    Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A court may dismiss "'based on the lack of cognizable legal theory or the absence of sufficient facts alleged'" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC,* 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.,* 880 F.3d 1048, 1061 (9th Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Teixeira v. Cty. of Alameda,* 873 F.3d 670, 678 (9th Cir. 2017). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly,* 550 U.S. at 556.

The court must accept as true the allegations in the complaint and construe them in favor

of the plaintiff. *Teixeira,* 873 F.3d at 678; *see also Iqbal,* 556 U.S. at 679; *Snyder & Assocs.*

*Acquisitions LLC v. United States,* 859 F.3d 1152, 1157 (9th Cir. 2017). Rule 8 requires that

complaints in federal court consist of "a short and plain statement of the claim showing that the

pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2). The pleading standard under Rule 8 "does

not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555);

*see also* FED. R. CIV. P. 8(a) (2). "[L]abels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do[.]" *Twombly,* 550 U.S. at 555. However, a claim "may

proceed even if it strikes a savvy judge that actual proof of [necessary] facts is improbable," and

the plaintiff is unlikely to succeed on the merits. *Id.* at 556.

*Discussion*

I.      Fred Meyer's Motion to Dismiss Pursuant to Rule 12(b)(1)

Fred Meyer contends that Plaintiffs' lawsuit is, at bottom, an attack on the Bottle Bill.

According to Fred Meyer, the bottle deposits are a "tax" and the Tax Injunction Act ("TIA")

deprives this court of jurisdiction. 28 U.S.C. § 1341. Plaintiffs respond that the ten-cent deposit

is not a tax, that their lawsuit does not implicate any provision of the Bottle Bill, and that they are

not seeking to "enjoin, suspend or restrain" the collection of bottle deposits, but instead are

attempting to curtail Fred Meyer's deceptive practice of charging ten cents more for

nonredeemable containers. Plaintiffs are correct.

A.      *The Ten-Cent Bottle Deposit Is Not a Tax Under the TIA*

The TIA provides:

Page 8 – FINDINGS AND RECOMMENDATION

> The district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341.   "By its plain language, the Act deprives federal district courts of subject matter jurisdiction over actions for injunctive relief from state taxation schemes."   *Marvin F. Poer & Co. v. Counties of Alameda*, 725 F.2d 1234, 1235 (9th Cir.1984).   The statute "was designed expressly to restrict the jurisdiction of the district courts of the United States over suits relating to the collection of State taxes."   *Hibbs v. Winn*, 542 U.S. 88, 104 (2004) (quotation omitted). Consequently, the court must determine if the TIA applies.   *May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1275 (9th Cir. 2004); *see also Donaldson v. Williams*, Case No. 2:12-cv-80-SU, 2012 WL 5398307, at *8 (D. Or. Sept. 6, 2012) ("Federal courts have generally dismissed cases in which plaintiffs have sought both injunctive or declaratory relief and a refund or damages.").   The rule codified in the Act "is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems."   *Dillon v. State of Montana*, 634 F.2d 463 (9th Cir. 1980).

"Federal law determines whether an assessment qualifies as a 'tax' for purposes of the TIA."   *Wright v. Riveland*, 219 F.3d 905, 911 (9th Cir. 2000).   The Ninth Circuit considers three factors to determine whether an assessment is a tax:   "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed."   *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996).

1.      entity imposing the assessment

The first factor suggests that the ten-cent bottle deposit is not a tax under the TIA. Retailers, Fred Meyer in this instance, collect the bottle deposit at the point of sale.   Although the

Page 9  – FINDINGS AND RECOMMENDATION

authority for charging the bottle deposit is premised on state law, it is not the legislature or any other taxing authority or agency that collects or receives the bottle deposit. "An assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency." *Bidart,* 73 F.3d at 931. The state receives no revenue from retailers or distributors under the Bottle Bill. (Bottle Bill FAQs at 10.) Further, the bottle deposits collected by each retailer remain with each retailer – they are not pooled or collected by any entity, and this weighs in favor of finding the assessment is not tax. *Bidart*, 73 F.3d at 931 (noting that assessment of one-fourth cent per pound of apples paid by apple producers to independent commission weighed in favor of finding assessment was not a tax, despite that state law imposed the assessment).

>    2.    parties upon which the assessment is posed

The second factor suggests that the bottle deposit is a tax. Fred Meyer is correct that "[a]n assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." *Bidart*, 73 F.3d at 931. Bottle deposits are applied to every sale of a beverage covered by the Bottle Bill and therefore is paid by a very large number of persons. And, the Bottle Bill requires all retailers, like Fred Meyer, to charge the assessment on their customers' purchases of covered beverages. OR. REV. STAT. § 459A.700(5) (defining dealers as every person who engages in the sale of beverages in beverage containers to a consumer.) However, not all beverages are covered by the Bottle Bill, and consumers' purchases of beverages subject to the extra ten-cent charge are voluntary.

>    3.    the "ultimate use" of the assessments

The court turns to the third factor and whether the assessment is for general use or for the benefit of those upon whom it is imposed. *Bidart Bros.*, 73 F.3d at 931; *accord Qwest v. City of*

Page 10  – FINDINGS AND RECOMMENDATION

*Surprise*, 434 F.3d 1176, 1183 (9th Cir. 2006) ("When the first two *Bidart* factors are not dispositive, courts emphasize the third factor – the way in which the revenue is ultimately spent.") "Assessments treated as general revenues and paid into the state's general fund are taxes," whereas those "placed in a special fund and used only for special purposes" are less likely to be a tax.   *Id.* at 932.   Yet, even those assessments that are segregated from general revenues may be taxes under the TIA if they are "expended to provide 'a general benefit to the public.'"   *Id.* (quoting *San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of Puerto Rico*, 967 F.2d 683, 685 (1st Cir. 1992)).

Consideration of the third factor demonstrates that the ten-cent bottle deposit is not a tax under the TIA.   *Id.* at 932-33.   As noted above, the bottle deposit charges collected by Fred Meyer are not provided to the State of Oregon, and, thus the bottle deposit sums are not revenue.   Instead, the sums are retained by Fred Meyer to be refunded directly to customers when the empty beverage containers are redeemed.

Fred Meyer insists that although the funds raised by the bottle deposit are transferred between private entities, the bottle deposit is a tax.   *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 730 (7th Cir. 2011) (holding that assessment of percentage of gross receipts to a fund to benefit racetracks was "tax" under TIA).   Fred Meyer contends that the bottle deposit is akin to a transfer payment, or a "sin tax" because it is designed to incentivize certain conduct.   According to Fred Meyer, the funds are designed to achieve public purposes, and therefore, the assessment is a tax.   (Def.'s Br. at 17.)   The court disagrees.

As the Ninth Circuit said in *Bidart*, "an indirect public benefit" does not render an assessment at tax.   In *Bidart*, the Ninth Circuit examined an assessment paid by apple producers. 73 F.3d at 927-28.   There, California passed legislation in 1990 authorizing the creation of the California Apple Commission in order to maintain and promote that apple industry.   *Id.* at 927.

Page 11  – FINDINGS AND RECOMMENDATION

In 1994, the Commission was created by a majority vote of apple producers, and the Commission assessed a fee of one-fourth cent per pound of apples on all apple producers who grew and sold over a certain amount of apples each year. *Id.* at 928. The assessments were paid to the Commission which, in turn, used the assessments to promote the sale of apples. *Id.* Additionally, the Commission was a division of the state government, could levy fines for late or unpaid assessments, and if the Commission was disbanded, it was required to return fees to the apple producers. *Id.* Bidart Brothers, an apple producer, challenged the assessments in federal court, and the Commission argued that the district court lacked jurisdiction under the TIA. *Id.*

The *Bidart* court held the assessments were not a tax after examining their ultimate use. The assessments were segregated from general revenues. *Id.* at 932. The *Bidart* court rejected the Commission's argument that the assessments are a "tax" because the law was enacted for the benefit of the entire community and increased knowledge about "the uses, healthful properties, and nutritional value of apples." *Id.* The court determined that the "indirect benefit that may accrue to California's general populace through increased demand for apples as a result of advertising or education is not the type of public benefit that makes an assessment at tax." *Id.* at 933.

The *Bidart* rationale is instructive here. The bottle deposits are not collected by any regulatory agency and do not raise revenue for Oregon. That the Bottle Bill may keep beverage containers out of landfills may benefit Oregon's general welfare, but this indirect public benefit is not sufficient to create a tax. *See Hexom v. Oregon Dep't of Transp.*, 177 F.3d 1134, 1138-39 (9th Cir. 1999) (holding that disabled person parking placard fee was not a tax because the nominal amount charged was designed to cover only the cost of program, and not to raise revenue, encouraging practical, commonsense approach, thus was not a tax under TIA); *cf., City of Surprise*,

Page 12 – FINDINGS AND RECOMMENDATION

434 F.3d at 1183 (holding that city ordinance charging rental fee for right-of-way use was a tax under TIA because revenue raised by fee flowed into city's general fund).   Therefore, because the ten-cent bottle deposit does not raise revenue and its public benefit is indirect, it is not a tax under the TIA.   Accordingly, Fred Meyer's motion to dismiss for lack of jurisdiction should be denied.

B.    *Comity Does Not Require Dismissal*

Fred Meyer contends that even if the TIA does not require dismissal, the principals of comity require the court to dismiss.   The court disagrees.

Contrary to Fred Meyer's contention, Plaintiffs are not challenging the underlying Bottle Bill or its statutory scheme.   Plaintiffs are not challenging Fred Meyer's authority to charge ten-cent bottle deposits for those beverages that are covered by the Bottle Bill.   Instead, Plaintiffs are challenging Fred Meyer's practice of charging ten cents extra for beverages that are not redeemable under the guise of the Bottle Bill, and improperly retaining the money.   As properly construed, Plaintiffs' action does not challenge or implicate the Bottle Bill, and Fred Meyer's arguments are misplaced.   Thus, Plaintiffs are not seeking to enjoin a tax, but instead are seeking damages for an allegedly illegal, unfair scheme.

Furthermore, comity does not require dismissal of this action.   Plaintiffs are not seeking relief from any provision of the Bottle Bill, nor are they challenging any provision of the Bottle Bill itself.   Their action does not challenge the exempt or non-exempt classifications of any beverage containers under the Bottle Bill.   Rather, their action is a straightforward challenge to Fred Meyer's conduct under the UTPA.   Fred Meyer has not demonstrated why a state court is in a better position than a federal court sitting in diversity to address the issues presented.   *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 431-32 (2010) (holding that comity required dismissal of federal action because case involved challenge to exemptions under Ohio's tax scheme).

Page 13  – FINDINGS AND RECOMMENDATION

In short, neither the TIA nor the comity doctrine require the court to dismiss Plaintiffs action.   Fred Meyer's motion to dismiss for lack of jurisdiction under Rule 12(b)(1) should be denied.

II.    Fred Meyer's Motion to Dismiss Pursuant to Rule 12(b)(6)

Fred Meyer moves to dismiss Plaintiffs' claims on several grounds:   (1) they fail to allege any specific facts pertaining to nineteen of the twenty-five named Plaintiffs and their claims fail under Rule 8; (2) their UTPA claims sound in fraud and fail to satisfy Rule 9(b)'s heightened pleading requirement; (3) their claims fail to allege causation or damages under any theory; (4) their various UTPA claims fail to relate to goods or services, and fail to adequately allege separate violations; and (5) they fail to allege a willful UTPA claim.

Plaintiffs respond that the Rule 9(b) is inapplicable to the UTPA claims they assert in this action, that they have sufficiently alleged ascertainable loss and causation under the theories of diminished value and illegal charges, and that the alleged violations occurred in the sale of consumer goods.   Plaintiffs further assert that their unjust enrichment and elder abuse claims are premised on the same causation and damages allegations as their UTPA claims, and similarly allege plausible claims for relief.

A.    *Plaintiffs Have Not Pleaded Sufficient Facts Pertaining to All Named Plaintiffs*

Under Rule 8, allegations must be pleaded with sufficient factual support to establish a plausible entitlement to relief.   *Twombly*, 550 U.S. at 544; FED. R. CIV. P. 8(a)(2) (requiring a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief").   As Fred Meyer correctly highlights, Plaintiffs have pleaded facts relating to certain Plaintiffs and omits any allegations concerning others.   A review of the Amended Complaint reveals that Plaintiffs have included some facts concerning Plaintiffs Johnston, Ruggles, Simone,

Page 14  – FINDINGS AND RECOMMENDATION

Zach, Anderson, Conroy, and Teegarden, including receipts bearing information from their purchases of Florida's Natural orange juice from a Fred Meyer store.   (Am. Compl. ¶¶ 5, 9-14, ECF No. 5.)   The Amended Complaint contains no facts pertaining to the remaining individually named Plaintiffs, thereby omitting basic information concerning their entitlement to relief or that Fred Meyer plausibly could be liable for any alleged misconduct.   Plaintiffs do not respond to this argument, essentially conceding that they have failed to provide the necessary details to comport with Rule 8.

Furthermore, because there are no factual allegations for the bulk of the remaining individually named Plaintiffs, the court would be unable to assess whether they could serve as class representatives.   *See Chavez v. Wal-Mart Stores, Inc.*, Case No. CV 13-6429-GHK (PJWs), 2014 WL 12591252, at *2 (C.D. Cal. June 2, 2014) (noting that prior to class certification, only named plaintiffs' individual claims are at issue and must sufficient state claims for relief); *Rutherford v. FIA Card Servs, N.A.*, No. CV 11-04433 DDP (MANx), 2012 WL 5830081, at *4 (C.D. Cal. Nov. 16, 2012) (deciding whether statute of limitations had run for individual plaintiff in putative class action, noting that court "looks only to the allegations pled as to Plaintiff himself" on a motion to dismiss).   Plaintiffs must include additional factual detail for those persons seeking to serve as class representatives in the future.

Accordingly, the court recommends that this portion of Fred Meyer's motion be granted. The court further recommends that dismissal be granted with leave to amend so that Plaintiffs may include additional factual allegations as described above.

B.     *Rule 9(b) Does Not Apply to Plaintiffs' UTPA Claims*

Fred Meyer argues that Plaintiffs' UTPA claims sound in fraud and therefore must adhere to the heightened pleading standards of Rule 9(b).

Page 15 – FINDINGS AND RECOMMENDATION

1.    Rule 9(b) standards

Rule 9(b) requires a plaintiff alleging such claims to "state with particularity the circumstances constituting fraud." *Id.* "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Further, if the plaintiff claims a statement is false or misleading, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). In other words, the plaintiff "must set forth an explanation as to why the statement or omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997). Rule 9(b)'s heightened standard applies to all claims that "'sound in fraud.'" *Vess*, 317 F.3d at 1103-04 ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." (citations omitted)). Rule 9(b) may apply to claims brought pursuant to consumer protections statutes, including Oregon's UTPA, where the claims sound in fraud. *Kearns*, 567 F.3d at 1125; *Silva v. Unique Beverage Co.*, Case No. 3:17-cv-00391-HZ, 2017 WL 2642286, at *13 (D. Or. June 15, 2017).

The Ninth Circuit focuses on the purpose behind Rule 9(b) when determining whether claims must be pleaded with specificity. *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1041 (D. Or. 2014). Rule 9(b) serves three primary purposes:

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Kearns*, 567 F.3d at 1125 (internal quotations and citations omitted).

      2.     Plaintiffs' UTPA claims do not sound in fraud

Fred Meyer argues that Plaintiffs allege a unified course of fraudulent conduct that must be pleaded with particularity under Rule 9(b). Fred Meyer contends that Plaintiffs allege that it made false and misleading representations, and that it implemented its scheme knowingly, willfully, maliciously, and recklessly, with intent. (Am. Compl. ¶¶ 20-25, 30, 35.) Fred Meyer argues that Plaintiffs allege that it intended to cause confusion in consumers, and that it caused ascertainable losses to Plaintiffs based on its wrongful taking of money. (Am. Compl. ¶¶ 17-18, 15, 30, 35-37.) Fred Meyer asserts that Plaintiff's generalized pleadings fall short of what Rule 9(b) requires.

Plaintiffs respond that their UTPA claims are premised on misrepresentation and that Rule 9(b) does not apply. Plaintiffs argue that they have not alleged a unified course of fraudulent conduct, and that fraud is not a necessary element of any claim. (Pls.'s Resp. at 25.) Plaintiffs further contend that even if Rule 9(b) applies, the allegations in the Amended Complaint readily satisfy this requirement.

The Amended Complaint does not contain an expressly alleged fraud claim.  Thus, the court must consider whether Plaintiff's claims are "grounded in fraud," rely exclusively on a "unified course of fraudulent conduct," or whether fraud is a "necessary element" of a claim. *Silva*, 2017 WL 2642286, at *13 (internal quotations omitted); *Kearns*, 567 F.3d at 1124; *see also Voltage Pictures, LLC v. Revitch*, No. 6:14-CV-301-AA, 2015 WL 404599, at *3, 6 (D. Or. Jan. 23, 2015) (discussing that whether Rule 9(b) applies to UTPA claims depends on whether the claim sounds in fraud).  "To determine if a claim is grounded in fraud, courts compare the claim to the elements of a state common law fraud claim."  *Silva*, 2017 WL 2642286, at *13 (citing *McKie v. Sears Protection Co.*, No. CV 10-1531-PK, 2011 WL 1587112, at *10 (D. Or. Feb. 22, 2011), *adopted by* 2011 WL 1587103 (Apr. 26, 2011).

The elements of common law fraud in Oregon are:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Kearney*, 65 F. Supp. 3d at 1042 (internal quotation and citation omitted).

In the Amended Complaint, Plaintiffs' UTPA allegations assert that Fred Meyer in three primary respects:  (1) Fred Meyer misrepresented that the empty Florida's Natural beverage containers could be redeemed for ten cents; (2) Fred Meyer failed to disclose that the containers were not, in fact, redeemable; and (3) Fred Meyer caused confusion about whether the empty beverage containers were redeemable.   Plaintiffs' numerous UTPA claims allege both affirmative misrepresentations and misrepresentations of omission or non-disclosure.

Examining similar claims in *Silva*, the court determined that where the UTPA allegations involve both affirmative misrepresentations and misrepresentations by omission or non-disclosure,

the differences between the UTPA claims alleged and common law fraud dictate that the heightened pleading requirements of Rule 9(b) do not apply. *Silva*, 2017 WL 2642286, at *13 (holding Rule 9(b) did not apply to claims under O.R.S. §§ 646.608(1)(b), and (1)(e)); *McKie*, 2011 WL 15787112, at *11 (finding Rule 9(b) did not apply to elder abuse allegations and UTPA claims alleging misrepresentations and omissions of fact).

Fred Meyer attempts to distinguish *Silva* and *McKie*, contending that those cases examined only whether fraud is a "necessary element" of the UTPA claims. According to Fred Meyer, Plaintiffs here premise their UTPA claims on a "unified course of conduct" and that the court's analysis is governed by *Kearney* and *Vinci v. Hyundai Motor Am.*, Case No. SA CV 17-0997-DOC (KESx), 2018 WL 6136828, at *12, (C.D. Cal. Apr. 10, 2018). The court is not convinced.

In *Vinci*, the court concluded that Rule 9(b) applied to the plaintiff's Oregon UTPA claims "[b]ecause all of Plaintiff's claims are based on the same allegedly fraudulent course of conduct – the concealment of facts related to the allegedly defective power steering in Class Vehicle – a theory sounding in fraud[.]" 2018 WL 6136828, at *12. Unlike *Vinci*, Plaintiffs here are not asserting that facts were concealed from them in course of their beverage purchase, and the case has no application here.

In *Kearney*, the plaintiffs there alleged that they had been deceived by an advertisement for a free lift ticket and asserted various UTPA claims. *Kearney*, 65 F. Supp. 3d at 1041. The *Kearney* court concluded that Rule 9(b) applied to the Oregon UTPA claims because the claims "sounded in fraud." *Id.* at 1042-43. The court compared the plaintiffs' allegations against Oregon common law fraud claims and determined that they asserted "a unified course of fraudulent conduct as the basis for their claim" and, therefore, Rule 9(b) applied to pleading as whole. *Id.* at 1043. Unlike the allegations in *Kearney*, Plaintiffs here do not allege that Fred Meyer undertook

Page 19 – FINDINGS AND RECOMMENDATION

an advertising campaign to induce Plaintiffs to purchase Florida's Natural because the empty containers could be redeemed pursuant to the Bottle Bill.   And, unlike the lift tickets at issue in *Kearney*, Plaintiffs do not allege that they purchased Florida's Natural orange juice in reliance on Fred Meyer's representation that their empty containers could be redeemed.   While the redeemability of the beverage container may play some role in tipping the scales between purchasing one beverage over another, Plaintiffs UTPA claims are not based on affirmative misrepresentations premised on fraud.   Thus, Plaintiffs' claims are not grounded in fraud and Rule 9(b) is not applicable.

Furthermore, the claims and facts in this action are not so complicated that Fred Meyer is unable to fully understand the nature of the allegations and defend against them; applying Rule 9(b) here would not further the rule's purpose.   *Kearns*, 567 F.3d at 1125.   For all these reasons, Rule 9(b) does not apply.

C.      *Plaintiffs' Specific UTPA Allegations*

The UTPA is a comprehensive statute aimed at protecting consumers from unfair and dishonest business practices and behavior.   *Pearson v. Phillip Morris, Inc.*, 358 Or. 88, 115 (2015).   The statute provides an expansive list of business practices deemed unlawful.   *Id.*; *Colquitt v. Mfrs. And Traders Trust Co.*, 144 F. Supp. 3d 1219, 1231 (D. Or. 2015) (noting there are seventy-seven separate sections of the UTPA).   The UTPA provides for both public and private enforcement.   OR. REV. STAT. §§ 646.632, 646.638; *Silva*, 2017 WL 2642286, at *9. Private persons may bring an action under the UTPA if they have suffered an "ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608."   OR. REV. STAT. § 646.638(1).

Page 20 – FINDINGS AND RECOMMENDATION

To state an actionable claim under the UTPA, a plaintiff must identify specific conduct that violates an enumerated provision of the UTPA. *See Horton v. Nelson*, 252 Or. App. 611, 620 (2012) (providing that to constitute a violation, there must be a specific administrative rule prohibiting the conduct); *accord* Or. Rev. Stat. §§ 646.608(1)(u), 646.608(4) (providing no private right of action under UTPA catch-all provision). Thus, to state a claim under the UTPA a plaintiff must allege: (1) a violation of O.R.S. § 646.608(1); (2) causation; (3) damages; and (4) willfulness. *Colquitt*, 144 F. Supp. 3d at 1231 (citing *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1139 (D. Or. 2014)). "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." Or. Rev. Stat. § 646.605(10). And, a plaintiff seeking to recover statutory damages on behalf of class member must establish that they have sustained an ascertainable loss of money or property and such loss must result from the "reckless or knowing" use of an unlawful trade practice by the defendant. Or. Rev. Stat. § 638(8)(a).

In the amended complaint, Plaintiffs contend that Fred Meyer has violated the following UTPA provisions: O.R.S. § 646.608(1)(b), (e), (i), (j), (k), (s), and (t). The court examines each subsection in turn.

1.    O.R.S. § 646.608(1)(b)

Section 646.608(1)(b) declares it unlawful for persons in the course of their business to "[c]ause[] [the] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services." In the Amended Complaint, Plaintiffs assert that Fred Meyer has caused the "likelihood of confusion and misunderstanding as to the source of the additional 10-cent charge it added to the price of the exempt beverages," that it was "mandated by law" and whether the "10-cent charge would be redeemable" when the containers

Page 21  – FINDINGS AND RECOMMENDATION

were returned.    (Am. Compl. ¶ 17.)    Plaintiffs also allege that Fred Meyer caused the likelihood

of confusion and misunderstanding that the ten-cent charge added to the price of the exempt

beverage "was approved or certified by the Oregon legislature through the Oregon bottle deposit

law" and whether the ten-cent charge was redeemable.    (Am. Compl. ¶ 18.)

Fred Meyer argues that Plaintiffs' allegations fail to state a claim because the ten-cent

deposit is not a "good" as defined under the UTPA.    Fred Meyer also contends that the ten-cent

deposit cannot be a representation about a "good" suggesting that "money is a medium, not an

article, of commerce."    *Roach v. Mead*, 76 Or. App. 83, 87 (1985).    According to Fred Meyer,

because the ten-cent deposit is not a good as defined under the UTPA, Plaintiffs have not

sufficiently asserted a violation under § 646.608(1)(b) and their claim should be dismissed.

Plaintiffs respond that Fred Meyer reads the UTPA too narrowly, and that many of

prohibited trade practices relate to sales of goods, which in turn are defined as those that are

obtained for personal, family or household purposes.    OR. REV. STAT. § 646.605(6)(a).    Plaintiffs

argue that the UTPA prohibits specific trade practices – here the sale of goods – and that Fred

Meyer's focus on the form of the violation (the ten-cent charge), is too narrow.    According to

Plaintiffs, each of their claims pertains to Fred Meyer's sale of consumer goods, in this case, orange

juice.

The court addressed similar arguments in the *Gilberto* F&R.    *Gilberto* F&R at 14-18.

There, the court concluded that "goods" under § 646.608(1)(b) pertained to the item itself – the

exempt beverage – and not the ten-cent charge.    *Gilberto* F&R at 17-18.    This portion of the

*Gilberto* F&R was adopted by Judge Hernandez.    *Gilberto*, 2020 WL 1890538, at *1.    Having

carefully considered the parties' arguments asserted here convinces the court that a different

outcome is not warranted.    Accordingly, the court concludes that because the Amended

Page 22 – FINDINGS AND RECOMMENDATION

Complaint alleges that Fred Meyer caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of the ten-cent bottle deposit, which is not a "good" within the meaning of the UPTA, the facts as alleged fail to state an actionable violation of § 646.608(1)(b).

        2.        O.R.S. § 646.608(1)(e)

Section 646.608(1)(e) makes it unlawful to "represent[] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have[.]"  OR. REV. STAT. § 646.608(1)(e).   In the Amended Complaint, Plaintiffs assert that Fred Meyer violated section (1)(e) by representing that that the "exempt beverages had characteristics, uses, benefits, and qualities that they did not have" and that "the exempt beverage containers would be redeemable in the amount of the 10-cent charge Fred Meyer added to the price" and by "failing to disclose that the 10-cent charge it added to price of the exempt beverages would not be redeemable."  (Am. Compl. ¶ 19).

Fred Meyer argues that because the alleged misrepresentations concern only the characteristics of the ten-cent deposit and not the underlying beverage itself, Plaintiffs fail to set forth a violation under § 646.608(1)(e).   Plaintiffs respond that because the characteristics relate to the sale of the beverages, they have plausibly alleged a violation under section (1)(e).

The court addressed similar arguments in the *Gilberto* F&R.   There the court found that a "misrepresentation concerning the redeemability of the beverage containers may serve as the basis" of a section (1)(e) violation "if it constitutes a characteristic, use, benefit, or quality of the beverage products as a whole."   *Gilberto* F&R at 20.   However, the court concluded that redeemability of containers did not impact the value of the beverages, and that there was nothing about the "packaging that increases the value of the beverages or might induce consumers to

purchase one type of beverage over another." *Id.* at 22.    Thus, the court concluded that redeemability of the containers was not a "characteristic," "quality," or "benefit" of beverages and thus, Gilberto failed to state a claim under section (1)(e).    *Id.* at 23.

Judge Hernandez declined to adopt this portion of the court's rationale.    *Gilberto*, 2020 WL 1890538, at *1.    Judge Hernandez determined that as a matter of law, the court could not conclude that redeemability of the packaging was not a characteristic or quality of the good under section (1)(e).    *Id.*    Instead, he concluded that the redeemability of the packaging may be distinguishing attribute of the good, may increase the value of the good, or may induce a reasonable consumer to purchase one good over another, and that such a question was more appropriate for summary judgment.    Thus, Judge Hernandez concluded that Gilberto had stated a plausible violation of § 646.608(1)(e).    *Id.* at *1.

Fred Meyer's current arguments are similar to those asserted by Walgreen and provide no basis for reaching a different conclusion than that reached by Judge Hernandez.    Therefore, the court finds that Plaintiffs here sufficiently have alleged a plausible violation § 646.608(1)(e).

3.    O.R.S. § 646.608(1)(i)

Section 646.608(1)(i) prohibits, in relevant part, advertising real estate, goods or services "with intent not to provide the real estate, goods or services as advertised."    Section 646.608(1)(i) is aimed at eliminating "bait and switch" transactions.    *Andriesian v. Cosmetic Dermatology Inc.*, Case No. 3:14-cv-01600-ST, 2015 WL 1638729, at *9 (D. Or. Mar. 3, 2015).    In the Amended Complaint, Plaintiffs assert that Fred Meyer represented "the exempt beverages would be redeemable in the amount of the 10-cent bottle deposit charge, with intent that the exempt beverage containers would not be redeemable in the amount of the 10-cent charge, or by charging the 10-

Page 24 – FINDINGS AND RECOMMENDATION

cent charge at its registers and on its receipts" without disclosing that the exempt beverages are not redeemable.   (Am. Compl. ¶ 20.)

Fred Meyer argues that Plaintiffs fail to state an actionable violation of section (1)(i) because they do not allege a misrepresentation or omission in its advertising about a "good." (Def.'s Mot. At 36.)   Plaintiffs respond that Fred Meyer misrepresented the price of the orange juice by charging ten cents more because the empty containers are not redeemable. (Pls.'s Resp. at 49.)

Section (1)(i) "prohibits advertising a good with the intent of not providing the good as advertised" and, therefore, whether the empty beverage containers are redeemable is not particularly relevant.   *Gilberto* F&R at 23-24.   As the court discussed in the *Gilberto* F&R:

> [C]harging the ten-cent bottle deposit at the registers and accounting for the ten-cent bottle deposit on receipts is not advertising.   Rather, "advertising" refers to the "[t]he action of drawing the public's attention to something to *promote its sale*," . . . and documenting a charge that is assessed as part of an item's sale cannot reasonably be considered promoting that sale when it is already in progress. Displaying the price of a good on a shelf in a retail store, however, constitutes advertising because the information included on a publicly displayed price tag draws the public's attention to the cost of the good and promotes its sale.

*Gilberto* F&R at 24 (quoting and emphasizing BLACK'S LAW DICTIONARY definition of *Advertise*). Judge Hernandez adopted the court's analysis concerning "advertising" under § 646.608(1)(i). The parties' current arguments do not provide a basis warranting application of a different rationale.

Unlike the allegations in *Gilberto*, Plaintiffs here do not contend that Fred Meyer advertised the price of the Florida's Natural orange juice on the price tags on the shelf or in any location.   In their Amended Complaint, Plaintiffs solely allege a § 646.608(1)(i) violation premised on being charged ten cents at the register and on their receipts.   (Am. Compl. ¶ 20.)   As

the court determined in the *Gilberto* F&R, including the charge at the register and on receipts is not "advertising" as used in the statute.  *Gilberto* F&R at 24.    Thus, the court finds that Plaintiffs have failed to allege that Fred Meyer has engaged in "advertising" as that term is used in § 646.608(1)(i) by including the ten-cent charge at the register and on the receipts.

Judge Hernandez disagreed with the court's analysis of intent as used in § 646.608(1)(i). In the *Gilberto* F&R, the court concluded that Gilberto had not alleged that Walgreen intended not to provide the goods as delivered in order to state a claim under § 646.608(1)(i).  *Gilberto* F&R at 24.   However, Judge Hernandez concluded that Gilberto alleged that she complained about the ten-cent overages and that the containers were not eligible for a refund, and that based on those allegations, she plausibly had alleged that Walgreen did not intend to provide the goods as advertised.  *Gilberto*, 2020 WL 1890538, at *2.

Unlike the facts alleged in *Gilberto*, Plaintiffs in this action make no allegations whatsoever that they attempted to return the empty orange juice cartons for a refund of the ten-cent charge, nor do they allege that they complained to Fred Meyer about the alleged overages.   Aside from Plaintiffs' purely conclusory allegations about Fred Meyer's knowledge, there are no factual allegations from which the court can plausibly infer that Fred Meyer did not intend to provide the goods as advertised.   Absent such allegations, the court concludes that Plaintiffs have failed to adequately allege intent necessary to state a plausible violation of § 646.608(1)(i).  *See Gilberto*, 2020 WL 1890538, at *2.

4.    O.R.S. § 646.608(1)(j)

Under § 646.608(1)(j), it is unlawful to make "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions."   The primary target of section (1)(j) is the "practice of luring customers with dubious representations that prices have

been 'slashed' by large percentages, sometimes said to be forced by 'going out of business,' 'removal,' or 'fire sales,'" but the Oregon Supreme Court has recognized that section (1)(j) "forbids sellers to misrepresent . . . or [fail to disclose] price reductions for any purpose." *Sanders v. Francis*, 277 Or. 593, 598 (1977).    In the Amended Complaint, Plaintiffs allege that Fred Meyer violated this section by "falsely and misleadingly representing at its registers and on its receipts, that the total price of the exempt beverage would be reduced by 10 cents" when the empty containers were redeemed, and "failing to disclose that the exempt beverage containers could not be redeemed in the amount of the ten-cent charge that was added by Fred Meyer."    (Am. Compl. ¶ 21.)

Fred Meyer contends that Plaintiffs fail to allege a violation under section (1)(j) because the container deposit is not a price reduction, but rather is part of the Bottle Bill's deposit and redemption scheme, and there are no allegations that the price of the beverage was represented as being discounted by ten-cents based on the redemption value.    (Def.'s Mot. at 37-38.)    Plaintiffs argue that Fred Meyer actually is charging ten cents more than represented, and that Fred Meyer is making misrepresentations of the normal price by suggesting there would be a price reduction when the container were returned for a refund.    (Pls.'s Resp. at 50.)

The court rejected these arguments in the *Gilberto* F&R and Judge Hernandez agreed. *Gilberto*, 2020 WL 1890538, at *1.    In the *Gilberto* F&R, the court determined that there was "no misrepresentation as to a reduction of the normal price as presently existing at the time of purchase, only an additional charge for the item." *Gilberto* F&R at 30.    The parties' arguments provide no basis for revisiting the court's rationale.    Therefore, because Fred Meyer has not misrepresented a "price reduction existing at the time of purchase" of the orange juice, Plaintiffs have failed to state a viable violation of section (1)(j).

Page 27 – FINDINGS AND RECOMMENDATION

5.    O.R.S. § 646.608(1)(k)

Section 646.608(1)(k) prohibits "false or misleading representations concerning the availability of credit or the nature of the transaction or obligation incurred." *See Fleshman v. Wells Fargo Bank, N.A.*, Case No. 3:13-cv-02062-HZ, 2015 WL 4488163, at *10 (D. Or. July 23, 2015) (holding that plaintiff stated claim under section (1)(k) where he alleged misrepresentations as to the amount of arrearages, payment amounts, escrow amounts or adjustments, and defendant refused to provide an accurate accounting under the loan). In the Amended Complaint, Plaintiffs allege that Fred Meyer violated section (1)(k) by "falsely and misleadingly representing the nature of the transaction or obligation incurred at its registers an on its receipts, that the total price of the exempt beverages would be reduced by 10 cents when the exempt beverages were redeemed, and failing to disclose that the exempt beverage containers could not be redeemed" by the ten-cent charge. (Am. Compl. ¶ 22.)

Fred Meyer argues that Plaintiffs cannot allege a violation under section (1)(k) because that section refers only to "credit" and credit transactions, and that Plaintiffs assert only the imposition of a fee in the form of a ten-cent bottle deposit, this claim must be dismissed. Plaintiffs assert that section (1)(k) not only relates to credit, but also to the "nature of the transaction," and that they have adequately alleged misrepresentations about the nature of the transaction by misrepresenting that the exempt beverage containers could be redeemed for ten cents, when they cannot.

The court is not persuaded by Plaintiffs' arguments. Plaintiffs cite no case law supporting their interpretation of § 646.608(1)(k), and it is not supported by a fair reading of the statute. Plaintiffs do not allege that Fred Meyer misrepresented any fact relating to credit, and their allegations concerning the ten-cent bottle deposits does not concern credit availability or the nature

Page 28  – FINDINGS AND RECOMMENDATION

of any credit transaction.    Case law interpreting § 646.608(1)(k) relates solely to credit availability, financing agreements, and credit obligations.    *Mendoza v. Lithia Motors, Inc.*, Case No. 6:16-cv-01264-AA, 2017 WL 125018, at *5 (D. Or. Jan. 11, 2017).

Thus, because the allegations in the Amended Complaint do not relate to "credit availability," the nature of a credit transaction, or an "obligation incurred" by Plaintiffs, their allegations fail to set out a viable violation of section (1)(k).

    6.    O.R.S. § 646.608(1)(t)

Section 646.608(1)(t) prohibits a person, concurrent with the tender and delivery of goods, from failing to disclose any known material defect or material nonconformity.    In the Amended Complaint, Plaintiffs allege that Fred Meyer, "concurrent with the tender and delivery of the exempt beverages, knowingly fail[ed] to disclose that the 10-cent charge did not conform to Oregon bottle deposit law, and [failed] to disclose that the exempt beverage containers were in fact not redeemable for 10 cents."    (Am. Compl. ¶ 24.)

Fred Meyer argues that Plaintiffs cannot allege a viable violation of section (1)(t) because there is no "material defect" with the underlying exempt beverage itself – here, the orange juice. (Def.s' Mot. at 37.)    And, Fred Meyer argues that the alleged "nonconformity" about which Plaintiffs are complaining is that the beverage container is not redeemable, which relates to the ten-cent deposit, not the beverages, and thus, section (1)(t) does not apply.    The court agrees with Fred Meyer.

As discussed above, the ten-cent bottle deposit itself is not a "good" and the failure to disclose that the ten-cent charge did not conform to the Bottle Bill does not constitute a violation of section (1)(t).    *Gilberto* F&R at 27; *Gilberto*, 2020 WL 18905538, at *1.    "Moreover, that the empty beverage containers were not redeemable for ten cents does not constitute a material defect

Page 29  – FINDINGS AND RECOMMENDATION

or material nonconformity of the beverages, but even if it could, the defect or nonconformity must be known and must be material." *Gilberto* F&R at 27.  And, if the redeemability of the packaging is an inherent characteristic or quality that may bear on consumers' decision to choose one beverage over another, Plaintiffs have not alleged that the nonconformity with the Bottle Bill was "material" to their purchasing decision. *Gilberto* F&R at 27-28 (defining *Material* as "of such a nature that knowledge of the item would affect a person's decision-making; significant; essential" in BLACK'S).  And, Plaintiffs here assert in conclusory fashion that Fred Meyer "knowingly" failed to disclose that the empty orange juice containers were not redeemable. Plaintiffs have failed to allege any facts that could plausibly establish that Fred Meyer had the requisite knowledge, at the time the exempt beverages were purchased, that the beverages were, in fact, not redeemable. *Gilberto* F&R at 28; *Gilberto*, 2020 WL 1890538, at *1.  Thus, Plaintiffs have failed to allege a viable violation of § 646.608(1)(t).

   7.  O.R.S. § 646.608(1)(s)

  Section (1)(s) prohibits a person from making "false or misleading representation of fact concerning the offering price of, or the person's cost for real estate, goods or services" in the course of business.  "As a general matter, this subsection requires transparency around costs passed on to the consumer." *Mendoza v. Lithia Motors Inc.*, Case No. 6:16-cv-01264-AA, 2018 WL 1513650, at *6 (D. Or. Mar. 27, 2018), *appeal filed* 2019 WL 1440260 (Mar. 30, 2019).  In the Amended Complaint, Plaintiffs allege that Fred Meyer violated section (1)(s) by "making false and misleading representations about the total cost its customers would pay for its exempt beverages, including by falsely and misleadingly representing at its registers and on its receipts, that the total price of the exempt beverages would be reduced by 10 cents" when the empty containers were redeemed, and "failing to disclose that the exempt beverage containers could not

Page 30  – FINDINGS AND RECOMMENDATION

be redeemed in the amount of the 10-cent charge" added by Fred Meyer.  (Am. Compl. ¶ 23.) And, "the unlawful trade practice must have caused the ascertainable loss that the plaintiff suffered."  *Id.*  To adequately plead the element of causation, the plaintiff must provide "sufficient detail to put Defendant on notice of the causal relationship between a particular alleged unfair business practice and the ascertainable loss and damages incurred as a result of that particular conduct."  *Fleshman*, 27 F. Supp. 3d at 1141.  "Whether reliance is required to establish causation turns on the nature of the unlawful trade practice and the ascertainable loss alleged."  *Pearson*, 289 Or. at 126 (citing *Redden*, 289 Or. at 384).

Fred Meyer argues that Plaintiffs have alleged only misrepresentations concerning the ten-cent deposit, and not any misrepresentation about the price of the beverage.  (Def.'s Mot. at 36-37.)  Fred Meyer also contends that Plaintiffs have failed to allege what the "total price" for any beverage would be or that it included the ten-cent deposit in any advertisement or representation. Plaintiffs respond that Fred Meyer represented that the price would be $3.29 or $3.49 as provided on its receipt and at the registers.   However, the "total price" was ten cents more ($3.39 or $3.59) because it falsely included the bottle deposit charge, when the empty containers could not, in fact, be redeemed. (Pls.' Resp. at 50.)

The court addressed similar arguments in the *Gilberto* F&R, and Judge Hernandez adopted the court's rationale.  *Gilberto* F&R at 26; *Gilberto*, 2020 WL 1890538, at *1.  The parties' arguments in this case provide no basis for straying from the rationale provided in *Gilberto*.

Thus, the court concludes that the ten-cent bottle deposit charge for redeeming the empty containers cannot be considered separately from the price of the beverages themselves.   "The term 'cost' refers to 'the amount paid or charged for something.''  *Gilberto* F&R at 26 (defining the term "cost" in BLACK'S); *see also Cost* Webster's ("the amount or equivalent paid or given or

charge or engage to be paid or given for anything bought or taken in barter or for service rendered"). As discussed in the *Gilberto* F&R, the ten-cent deposit is not independent from the price of the beverage, because even if the bottle deposit was imposed erroneously, the beverages could not have been purchased without paying the additional ten cents charged by Fred Meyer. *Gilberto* F&R at 26.

Additionally, the photographs included with the Amended Complaint demonstrate that Fred Meyer listed the additional charges separately on the receipts for Plaintiffs Ruggles, Simone, Zach, Anderson, Conroy, and Teegarden. (Am. Compl. ¶¶ 9-14.) The additional ten-cent charges were labeled "BOTTLE DEPOS" and were charged in tandem with the beverages. Based on this evidence, a reasonable consumer would assume the additional charges assessed on top of the purchase price were refundable in the event the empty beverage containers were returned. *Gilberto* F&R at 26. Fred Meyer thus represented that the total cost of the beverages – the amount charged and paid – included an additional ten-cent charge per beverage on top of the normal list price, and that the additional charges were a deposit which could be recovered. *Gilberto* F&R at 26. Fred Meyer did not disclose that the additional amount charged was not actually refundable, simply retaining the additional monies charged. *Id.* at 26-27. Taken as true, these facts sufficiently allege that Fred Meyer made misrepresentations of fact concerning the cost of the beverages, and adequately states a violation of § 646.608(1)(s). *Id.* at 27; *Gilberto*, 2020 WL 1890538, at *1.

E.     *Damages – Ascertainable Loss*

"[A] plaintiff in a private action [seeking to enforce the UTPA] must prove injury in the form of an "ascertainable loss of money or property." *Pearson*, 358 Or. at 116; OR. REV. STAT. § 646.638(1). An "ascertainable loss" is one "capable of being discovered, observed, or

Page 32 – FINDINGS AND RECOMMENDATION

established, *Scott v. Western Int'l Surplus Sales, Inc.,* 267 Or. 512, 515 (1973), and "must be objectively verifiable, much as damages in civil actions must be." *Pearson*, 358 Or. at 117.   The loss must be "money or property, real or personal." OR. REV. STAT. § 646.638(1).   "The loss need not be quantitatively large, and courts have found losses as small as $2 .00 to be quantitatively ascertainable." *Fauley v. Washington Mut. Bank FA*, Case No. 3:13-cv-00581-AC, 2014 WL 1217852, at *4 (D. Or. Mar. 21, 2014) (citing *Crooks v. Pay Less Drug Stores Nw., Inc.*, 285 Or. 481, 487 (1979)).

In the Amended Complaint, Plaintiffs allege that they "suffered ascertainable losses in the amount of the 10-cent charges that Fred Meyer unlawfully added on to the exempt beverages and collected from them."   (Am. Compl. ¶ 26.)   Plaintiffs assert that but for Fred Meyer's unlawful acts and omissions, they would have paid ten cents less for the same beverages, but ended up with beverages that were "worth 10 cents less because the empty exempt beverage containers" were not redeemable.   (*Id.*)

Fred Meyer argues that Plaintiffs have failed to plead any viable theory of ascertainable loss – product purchase price, diminished value, or illegal charge.   Plaintiffs contend that they plausibly have alleged ascertainable loss under the diminished value and illegal charge theories. Because Plaintiffs are not asserting ascertainable loss under the "product purchase price" theory, the court does not address it, and turns to the remaining two theories advanced by Plaintiffs.   (Pls.' Resp. at 38) (providing that Plaintiffs "do not allege a 'refund of the purchase price' ascertainable loss").

1.    diminished value

The court addressed similar arguments in the *Gilberto* F&R, and concluded that as alleged there, Gilberto had not sufficiently pleaded a "diminished value" theory of ascertainable loss.

Page 33  – FINDINGS AND RECOMMENDATION

*Gilberto* F&R at 31-33.   In the *Gilberto* F&R, the court determined that Gilberto failed to adequately allege diminished value because she failed to make any allegations about the qualities of the beverages that she purchased, and concluded that "redeemability" was not an "inherent characteristic" that affected the value of those beverages as then pleaded.   *Gilberto* F&R at 32. The court observed that Gilberto had not alleged that she was charged and paid an additional ten cents for an inherent feature "that might influence a consumer's choice of one beverage over another."   *Id.* at 33.   Thus, the court concluded that "no loss to the beverages' inherent value" was alleged to have occurred, and therefore, Gilberto failed to allege an ascertainable loss under the "diminished value" theory.   *Id.*   Judge Hernandez adopted this portion of the court's analysis. *Gilberto*, 2020 WL 1890538, at *1.   The parties' arguments provide no basis to warrant revisiting that rationale.

Accordingly, the court finds that as in *Gilberto*, Plaintiffs here have not alleged that the quality of the orange juice they purchased has been diminished.   Plaintiffs have failed to include allegations in the Amended Complaint asserting that the "redeemability" of the packaging, as opposed to the underlying beverage itself, is an inherent characteristic, quality, feature that added to the overall inherent value of the good that influenced their choice to purchase one beverage over another.   Therefore, as currently pleaded, Plaintiffs have failed to plausibly plead a "diminished value" theory of ascertainable loss.   *Gilberto* F&R at 33; *Gilberto*, 2020 WL 1890538, at *2.

2.    illegal charge

Fred Meyer argues that the illegal charge theory has no application to this case.   Fred Meyer contends that because there is no rule requiring retailers to inform consumers about the ten-cent bottle deposit or about the redeemability of any beverage containers, and that the illegal charge theory of ascertainable loss does not apply.   Plaintiffs assert that the they have sufficiently alleged

Page 34  – FINDINGS AND RECOMMENDATION

ascertainable loss under an "illegal charge" theory because they have contended that the fee charged was illegal.  Plaintiffs contend that because the ten-cent charge under the Bottle Bill was illegal, they do not need to allege reliance or ascertainable loss.

The court rejected Plaintiffs' position in Gilberto, and Judge Hernandez adopted that rationale.  *Gilberto* F&R at 34; *Gilberto*, 2020 WL 1890538, at *2.  As with the court's discussion of diminished value, there is nothing in the parties' arguments that warrants a different outcome.  Accordingly, the court concludes, that as in *Gilberto*, the illegal charge theory is not applicable to Plaintiffs' claims.

     *E.*    *Causation*

In order to state a claim under Oregon's UTPA, Plaintiffs must allege causation.  *Colquitt v. Mfrs. And Traders Trust Co.*, 3:15 -cv-00807-BR, 2016 WL 1276095, at *5 (D. Or. Apr. 1, 2016); *Fauley*, 2014 WL 1217852, at *5.  To adequately allege causation, a plaintiff must plead "sufficient detail to put Defendant on notice of the causal relationship between a particular alleged unfair business practice and the ascertainable loss and damages incurred as a result of that particular conduct."  *Fleshman*, 27 F. Supp. 3d at 1141.  Further, the plaintiff must "include any allegations from which the [c]ourt could infer [d]efendant knew or should have known [its conduct] was a violation of the UTPA."  *Colquitt*, 2016 WL 1276095, at *5 (internal quotation marks omitted); *Fauley*, 2014 WL 1217852, at *5 (noting that "[c]ausation is an essential element of an UPTA claim").  "Whether reliance is required to establish causation turns on the nature of the unlawful trade practice and the ascertainable loss alleged."  *Pearson*, 358 Or. at 126 (citing *Redden*, 289 Or. at 384).

Fred Meyer argues that Plaintiffs have not alleged any facts from which the court can infer that Plaintiffs attempted to make it aware of the alleged UTPA violation.  Plaintiffs assert that

Page 35  – FINDINGS AND RECOMMENDATION

they are not required to allege causation in detail because their claims rest on affirmative misrepresentations and non-disclosure.  Plaintiffs contend that they are not required to establish reliance to state any specific UTPA violation because they assert a diminished value theory of damages.

As noted above, Plaintiffs have not plausibly pleaded a diminished value theory of damages.  Even if Plaintiffs had alleged a viable ascertainable loss theory, as currently pleaded, Plaintiffs have failed to allege any facts which put Fred Meyer on notice of the causal relationship between Fred Meyer's alleged unfair business practices and Plaintiffs' alleged losses.  The Amended Complaint asserts no factual allegations that Plaintiffs undertook any actions to put Fred Meyer on notice of its alleged unfair business practice.  Plaintiffs do not allege that they complained to Fred Meyer management, complained at the register, or that they attempted to return their empty orange juice containers and were denied refunds.  Without such factual support, Plaintiffs have failed to plausibly plead that Fred Meyer knew or should have known that the nonredeemability of the empty orange juice containers was an unfair business practice.  Thus, Plaintiffs have failed to plausibly plead that the alleged losses were caused by Fred Meyer's actions in sufficient detail.  Accordingly, the district court should grant Fred Meyer's motion to dismiss on this basis.

F.    *Willful Violation*

A private plaintiff seeking to recover actual or statutory damages under the UTPA must demonstrate the violation was "willful," meaning the defendant "knew or should have known" its conduct violated § 646.608(1).  OR. REV. STAT. §§ 646.638(1), 646.605(10).  A private plaintiff seeking to recover statutory damages on behalf of a class, however, must establish the defendant's violative conduct was "reckless or knowing."  OR. REV. STAT. § 646.638(8)(a).  Plaintiffs'

Page 36  – FINDINGS AND RECOMMENDATION

Amended Complaint specifically asserts that Fred Meyer's behavior was "reckless, in pursuit of profit, and constituted a wanton, outrageous and oppressive" and seeks of actual damages or $200 statutory damages, punitive damages, reimbursed litigation expenses, fees, and costs.   (Am. Compl. ¶ 35.)

Fred Meyer argues that Plaintiffs have failed to allege any facts suggesting that imposition of the ten-cent deposit was purposeful as opposed to a mistake.   (Def.'s Mot. at 39.)   Fred Meyer contends that there are no allegations from any of the individual Plaintiffs that they informed it that the deposit was inappropriately being applied.   (*Id.*)   Plaintiffs respond that they have alleged that Fred Meyer has acted willfully under the UTPA because they have asserted that Fred Meyer knew it could not charge ten cents for exempt beverages, the exempt beverages were not redeemable, and charged the ten cents anyway.

The court address similar legal arguments in *Gilberto*.   In the *Gilberto* F&R, the court concluded that Gilberto failed to sufficiently plead that Walgreen's conduct was reckless or knowing.   *Gilberto* F&R at 35-36.   The court reasoned that Gilberto failed to allege specific information from which it could conclude that Walgreen was put on notice that its conduct possibly violated the UTPA.   *Gilberto* F&R at 36.

However, Judge Hernandez declined to adopt this portion of the *Gilberto* F&R, concluding that viewing the facts in the light most favorable to Gilberto, "the Court can reasonably infer that Defendant acted recklessly; Plaintiff complained about the 10-cent deposit to Defendant, Defendant was put on notice of its potential UTPA violation, and Defendant continue to apply the 10-cent deposit to exempt beverage containers." *Gilberto*, 2020 WL 1890538, at *2.   In that case, Gilberto pleaded that she complained to management and corporate after learning the empty

containers she purchased were not eligible for return of the ten-cent deposit. (Gilberto Am. Compl. ¶ 10, ECF No. 11.)

The court concludes that the analysis in *Gilberto* does not control the outcome here. Unlike *Gilberto*, Plaintiffs here do not allege that they complained to Fred Meyer at the time of purchase or at any point after their purchases. Additionally, unlike *Gilberto*, there are no allegations that any individual Plaintiffs in this action attempted to redeem their empty Florida's Natural orange juice containers at any time or complained to management, local or corporate, that their empty beverage containers were not eligible for a refund. Thus, unlike *Gilberto,* there are no facts from which this court can infer that Fred Meyer "was put on notice of its potential UTPA violation." Therefore, Plaintiffs have not alleged any facts from which this court plausibly can infer that the Fred Meyer "knew or should have known" its conduct violates § 646.608(1). Accordingly, the court concludes that Plaintiffs have failed to allege Fred Meyer's conduct was reckless or knowing. OR. REV. STAT. § 646.638(8)(a); *Hamilton v. General Mills, Inc.*, Case No. 6:16-cv-00382-MC, 2016 WL 6542840, at 2 (D. Or. Nov. 2, 2016) (dismissing the named plaintiff's amended class action complaint for failing to allege any facts that the defendants' misconduct was reckless or knowing).

In summary, Plaintiffs have failed to plausibly assert violations under §§ 646.608(1)(b), (e), (i), (j), (k), and (t), and has plausibly alleged a violation under § 646.608(1)(s). However, as currently pleaded, Plaintiffs have failed to plausibly allege causation, ascertainable loss, and that Fred Meyer's actions are willful in order to state a claim under the UTPA. Therefore, Fred Meyer's motion to dismiss Plaintiffs' UTPA claims should be granted without prejudice, and Plaintiffs should be afforded leave to amend.

////

Page 38 – FINDINGS AND RECOMMENDATION

G.    *Unjust Enrichment*

In their second claim for relief, Plaintiffs assert a claim for unjust enrichment asserting the following:

> As a matter of justice and equity, Fred Meyer should not be able to retain the 10 cents per beverage it wrongfully collected from plaintiffs and the putative class under these circumstances.  Plaintiffs and the putative class are entitled to restitution based on Fred Meyer's unjust enrichment as alleged in this complaint.

(Am. Class Action Compl. ¶ 36.)

In Oregon, unjust enrichment claims are determined on a "case-by-case basis."  *The Hoag Living Tr. dated Feb. 4, 2013 v. Hoag*, 292 Or. App. 34, 45 (2018) (citing *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115 (2017)).  "[C]ourts should decide whether 'any particular enrichment is unjust by examining whether the case type matches already recognized forms of unjust enrichment.'"  *Id.* (citing *Larisa's*, 362 Or. at 128).   One source of guidance the Oregon Supreme Court has recognized is the *Restatement (Third) of Restitution and Unjust Enrichment*, which contains a statement of four general principles and various sections addressing the types of circumstances in which liability in restitution is recognized.  *Brooks v. BC Custom Construction, Inc.*, 2019 WL 3763769, at *23 (D. Or. May 21, 2019) (citing *Hoag*, 292 Or. App. at 45, and *Larisa's*, 362 Or. at 128).

Fred Meyer moves to dismiss Plaintiffs' unjust enrichment claim because Plaintiffs have failed to plead causation or damages.  According to Fred Meyer, Plaintiffs have failed to allege that they attempted to return the empty beverage containers, and therefore, have not adequately pleaded that Fred Meyer has unjustly retained the benefit of an extra ten cents per empty beverage container.   In their Response, Plaintiffs contend that they have asserted viable theories of causation and damages in their UTPA claims and that their allegations apply equally to their unjust

Page 39  – FINDINGS AND RECOMMENDATION

enrichment claim.  (Pls.' Resp. at 42 n.7.)  Plaintiffs do not specifically identify a particular

theory upon which their unjust enrichment claim rests, but such a claim may fall under the theories

of wrongful gain or payment of money not due.  *See Restatement (Third) of Restitution & Unjust*

*Enrichment* (2011) § 3 Comment E (discussing disgorgement and culpability, noting that "[a]s a

general rule, even an innocent and inadvertent interference with the claimant's property leads to a

liability in restitution for the value of what has been taken"); § 6 Comment C (discussing mistake

as to the amount of the obligation owed, and that relief in restitution is available "without regard

to whether the mistake might be characterized as mutual or unilateral, a mistake of fact or a mistake

of law").

Plaintiffs identify Fred Meyer's receipt of a benefit, the extra ten cents per beverage on top

of the normal list price of the beverage, to which they are not entitled as the form of unjust

enrichment.  As discussed above, Plaintiffs have not alleged any facts from which the court can

infer that Plaintiffs attempted to return the empty orange juice containers and the refunds were

denied, or that they complained to anyone at Fred Meyer about its failure to accept the exempt

beverage containers, or that they demanded a refund of their ten cents at the register and were

denied.  However, liability under an unjust enrichment theory does not necessarily depend upon

awareness.  "An unjust enrichment claim based on mistake, for example, can allow imposition of

liability by operation of law, regardless of such awareness."  *Larisa's*, 362 Or. at 131; *see also*

*Gessele v. Jack in the Box, Inc.*, 427 F. Supp. 3d 1276, 1336-37 (D. Or. 2019) (discussing unjust

enrichment claim concerning retention of a rebate by an employer, citing *Restatement (Third) of*

*Restitution & Unjust Enrichment* § 48 and Oregon's longstanding implied right to a refund for

overpayment).  Accordingly, the court finds that Plaintiffs plausibly have stated a claim for unjust

enrichment as currently pleaded, and Fred Meyer's motion to dismiss the unjust enrichment claim should be denied.

    *H.*    *Elder Abuse*

Plaintiffs' third claim asserts a claim for financial elder abuse under O.R.S. § 124.110(1). To state an elder abuse claim under the statute, Plaintiffs must allege: "(1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful." *Swango v. Nationstar Sub1, LLC*, 292 F. Supp. 3d 1134, 1152 (D. Or. 2018) (internal quotation and citation omitted). Conduct is considered "wrongful" if it is "carried out in pursuit of an improper motive or by improper means." *Church v. Woods*, 190 Or. App. 112, 117 (2003). "Improper means" has been defined by Oregon courts to be "'independently wrongful by reason of' statutory or common law, beyond the mere fact of the injury complained of and includes 'violence, threats, intimidation, deceit, *misrepresentation*, bribery, unfounded litigation, defamation and disparaging falsehood.'" *McKie*, 2011 WL 1587112, at *10 (quoting *Church*, 77 Or. App. at 118) (emphasis in *McKie*). And, Oregon statutes define "misrepresentation" as requiring some form of knowing deception. *See* OR. REV. STAT. § 687.011 ("'Fraud or misrepresentation' means knowingly giving misinformation or a false impression through the intentional misstatement of, concealment of or failure to make known a material fact or by other means.") In the Amended Complaint, Plaintiffs allege that Plaintiff Arlene Johnston was over the age of sixty-five when she purchased an exempt beverage for personal consumption at an Oregon Fred Meyer location. (Am. Compl. ¶ 5.) Plaintiffs assert that Fred Meyer's behavior was a "wrongful taking of money" from elderly people aged sixty-five and older, and that Fred Meyer permitted its stores to commit elder abuse by "acting or failing to act under circumstances in which

a reasonable person should have known of the financial abuse." (Am. Compl. ¶ 37.) Plaintiffs seek actual damages, statutory damages, and fees and costs under the statute. (*Id.*)

Fred Meyer argues that Plaintiffs' elder abuse claim is deficient for two reasons: (1) Plaintiffs have not alleged any specific actions taken by Fred Meyer against Ms. Johnston; and (2) Plaintiffs have not alleged the Fred Meyer engaged in a wrongful taking of money or property. In their Response, Plaintiffs contend that they have asserted viable theories of causation and damages. The court disagrees.

The wrongful taking in Plaintiffs' elder abuse claim is premised on their UTPA claims. As discussed above, Plaintiffs have not adequately stated a UTPA claim, including a viable theory ascertainable loss. Accordingly, Plaintiffs' elder abuse allegations fail to plausibly allege a "wrongful taking of money" in order to state a claim for relief, and Fred Meyer's motion to dismiss should be granted. Plaintiffs should be granted leave to amend to cure the deficiencies identified above.

## Conclusion

For the reasons set forth above, Fred Meyer's Motion to Dismiss (ECF No. 24) should be DENIED IN PART, GRANTED IN PART, and Plaintiffs should be given leave to amend to cure the deficiencies noted herein.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 14 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.   When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of July, 2020.

JOHN V. ACOSTA
United States Magistrate Judge