IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ELISHA SOLANO et al.**, individually and on behalf of other customers,<br><br>Plaintiffs,<br><br>v.<br><br>**THE KROGER CO.**, doing business as Fred Meyer,<br><br>Defendant. | No. 3:18-cv-01488-AC<br><br>OPINION AND ORDER |

**MOSMAN, J.,**

On July 20, 2020, Magistrate Judge John V. Acosta issued his Amended Findings and Recommendation (F. & R.) [ECF 38]. Judge Acosta recommends that I grant in part and deny in part Defendant Fred Meyer's Motion to Dismiss [ECF 24]. Judge Acosta also recommends that I give Plaintiffs leave to amend their complaint to cure any deficiencies. Both Plaintiffs and Fred Meyer filed lengthy objections.

Upon review and for the reasons discussed below, I ADOPT in part Judge Acosta's F. & R. [ECF 38] and GRANT in part and DENY in part Fred Meyer's Motion to Dismiss [ECF 24]. I reject Fred Meyer's objections to the F. & R. I decline to adopt Judge Acosta's recommendations

1 – OPINION AND ORDER

as to ascertainable loss, causation, and scienter under Oregon's Unfair Trade Practices Act ("UTPA"). I GRANT Plaintiffs leave to amend to cure any remaining deficiencies.

## BACKGROUND

In this putative class action, Plaintiffs claim that Fred Meyer impermissibly charged a ten-cent bottle deposit on purchases of certain orange juice beverages that were exempt from Oregon's Bottle Bill. Plaintiffs allege that Fred Meyer violated seven subparts of the UTPA, along with an Oregon law prohibiting elder abuse. Plaintiffs also allege that Fred Meyer was unjustly enriched. Fred Meyer has moved to dismiss on two grounds: (1) this court lacks subject-matter jurisdiction and (2) Plaintiffs failed to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(1), (6). On the latter ground, Fred Meyer argues that Rule 9(b)'s heightened pleading standard applies.

Judge Acosta recommends that I deny Fred Meyer's Motion to Dismiss for lack of subject-matter jurisdiction. He further recommends that I apply Rule 8's pleading standard rather than Rule 9(b)'s and grant in part and deny in part Fred Meyer's Motion to Dismiss for failure to state a claim.

In light of Judge Acosta's F. & R., Plaintiffs have agreed to drop five of their seven UTPA challenges and their elder-abuse claim. Pls.' Obj. [ECF 41] at 10 n.3. Plaintiffs have also agreed to add additional factual details as to certain named parties, consistent with Judge Acosta's F. & R. *Id.* at 10. Even with these concessions, several issues remain, which I address below.

## STANDARD OF REVIEW

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge

2 – OPINION AND ORDER

but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F. & R. to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F. & R. depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F. & R. 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

### I.     Fred Meyer's Objections

Fred Meyer objects to the F. & R. on three grounds. First, it argues that the Tax Injunction Act ("TIA") deprives the district court of jurisdiction. Second, it argues that Rule 9(b)'s heightened pleading standard applies. Third, it argues that Plaintiffs' two remaining UTPA challenges are implausible. Upon review, I agree with and ADOPT as my own opinion Judge Acosta's F. & R. on the latter two grounds: Rule 9(b)'s heightened pleading standard does not apply, and Plaintiffs' two remaining UTPA challenges are plausible. I also agree with Judge Acosta's ultimate recommendation that the TIA does not deprive the district court of jurisdiction, but I write separately to explain why I believe this is so.

Under the TIA, "district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA "was designed expressly to restrict the jurisdiction of the district courts of the United States over suits relating to the collection of State

taxes." *Hibbs v. Winn*, 542 U.S. 88, 104 (2004) (citation omitted). Accordingly, the district court lacks jurisdiction over this matter if (1) the ten-cent bottle deposits under Oregon's Bottle Bill are a tax; (2) Plaintiffs seek to "enjoin, suspend, or restrain the assessment, levy, or collection of" that tax; and (3) Plaintiffs have "a plain, speedy and efficient remedy" in state court. 28 U.S.C. § 1341.

Judge Acosta resolved this matter on prong one. He applied Ninth Circuit case law and determined that the deposit is not a tax. F. & R. [ECF 38] at 9–13. Fred Meyer strenuously argues that Judge Acosta misapplied that case law and the deposit *is* a tax. Def.'s Objs. [ECF 42] at 13–23. However, regardless of whether the Bottle Bill imposes a tax, this issue is easily resolved on prong two: Plaintiffs are not seeking to enjoin, suspend, or restrain the assessment, levy, or collection of ten-cent deposits under the Bottle Bill.

The United States Supreme Court "has interpreted and applied the TIA only in cases Congress wrote the Act to address, *i.e.,* cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Hibbs*, 542 U.S. at 107. The TIA "serves 'state-revenue-protective objectives' and accordingly applies only if the requested relief would 'reduce the flow of state tax revenue.'" *Fredrickson v. Starbucks Corp.*, 840 F.3d 1119, 1123 (9th Cir. 2016) (quoting *Hibbs*, 542 U.S. at 104, 106). By its plain language, the TIA's focus is on prospective relief: enjoining, suspending, or restraining the assessment, levy, or collection of any tax under State law. *See Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 13–14 (2015) (explaining that the terms "enjoin," "suspend," and "restrain" in the TIA are terms of art in equity that refer to relief that "to some degree stops" an official action). In those cases in which a plaintiff seeks prospective relief, "the only question is whether the declaratory and injunctive relief the

plaintiffs seek would 'enjoin, suspend or restrain'—that is, stop—the collection of state taxes within the meaning of the [TIA]." *Fredrickson*, 840 F.3d at 1122.

Here, Plaintiffs are not seeking to enjoin, suspend, or restrain the assessment, levy, or collection of any tax. Judge Acosta reached this same conclusion, albeit in a different portion of his analysis:

> Contrary to Fred Meyer's contention, Plaintiffs are not challenging the underlying Bottle Bill or its statutory scheme. Plaintiffs are not challenging Fred Meyer's authority to charge ten-cent bottle deposits for those beverages that are covered by the Bottle Bill. Instead, Plaintiffs are challenging Fred Meyer's practice of charging ten cents extra for beverages that are not redeemable under the guise of the Bottle Bill, and improperly retaining the money. As properly construed, Plaintiffs' action does not challenge or implicate the Bottle Bill, and Fred Meyer's arguments are misplaced. Thus, Plaintiffs are not seeking to enjoin a tax, but instead are seeking damages for an allegedly illegal, unfair scheme.

F. & R. [ECF 38] at 13. For those very reasons, the TIA does not deprive the district court of jurisdiction to hear this case.

I therefore ADOPT Judge Acosta's recommendation that Fred Meyer's Motion to Dismiss for lack of subject-matter jurisdiction should be denied, and I reject all of Fred Meyer's objections to Judge Acosta's F. & R.

## II.  Plaintiffs' Objections

Plaintiffs object to Judge Acosta's recommendations regarding ascertainable loss, causation, and scienter under the UTPA. Judge Acosta concluded that Plaintiffs failed to plausibly allege that any violation of the UTPA caused Plaintiffs an ascertainable loss or that Fred Meyer acted with the requisite scienter. I disagree.

The UTPA authorizes private civil actions.

> [A] person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608 . . . may bring an individual action

5 – OPINION AND ORDER

in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater.

Or. Rev. Stat. § 646.638(1). In a class action, plaintiffs may recover statutory damages only if they suffered an ascertainable loss "as a result of a reckless or knowing use or employment" of an unlawful trade practice. *Id.* § 646.638(8)(a).

Thus, Plaintiffs must establish (1) that they suffered an ascertainable loss (2) as a result of Fred Meyer's unlawful trade practice, and (3) that Fred Meyer acted with the requisite scienter. I address these three requirements in turn.

### A.     Ascertainable Loss

Plaintiffs can prove ascertainable loss under one of a number of different theories. "Under the typical UTPA scenario, the loss is evidenced by the difference in value between the product as represented by the defendant and as actually received by the plaintiff." *Paul v. Providence Health System-Oregon*, 240 P.3d 1110, 1121 (Or. Ct. App. 2010) (collecting cases). This is known as the "diminished value theory of ascertainable loss," *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 23–24 (Or. 2015), and it is the primary theory advanced by Plaintiffs here.[1] To succeed, Plaintiffs must establish that Fred Meyer misrepresented the beverages to be worth ten cents more than they actually were. The ascertainable loss is the difference between the price as misrepresented and the actual value: ten cents.

This is a typical UTPA scenario featuring a diminished value theory of ascertainable loss, and Plaintiffs have sufficiently pled that they suffered an ascertainable loss of ten cents per beverage.

---

[1] Plaintiffs also advance an "illegal charge" theory but do not brief that theory in their objections "because this is a very straightforward diminished value loss case and this theory is more well-rooted in the caselaw." Pls.' Obj. [ECF 41] at 10. Judge Acosta's conclusion that the "illegal charge" theory is inapplicable here is sound, and I ADOPT it.

Judge Acosta concluded otherwise for two reasons. First, he reasoned that Plaintiffs failed to assert "that the 'redeemability' of the packaging, as opposed to the underlying beverage itself, is an inherent characteristic, quality, feature that added to the overall inherent value of the good." F. & R. [ECF 38] at 34. But this does not mean that Plaintiffs failed to assert ascertainable loss. Plaintiffs have provided copies of receipts that list "BOTTLE DEPOS 0.10" immediately following "FLA NATURAL." Pls.' Am. Compl. [ECF 5] at 5–10. As Judge Acosta reasoned elsewhere in his F. & R., "a reasonable consumer would assume the additional charges assessed on top of the purchase price were refundable in the event the empty beverage containers were returned." F. & R. [ECF 38] at 32. And Plaintiffs have plausibly alleged that the containers were in fact not redeemable and therefore the ten-cent charge was an ascertainable loss.

Second, Judge Acosta concluded that Plaintiffs have failed to assert that the redeemability of the container "influenced their choice to purchase one beverage over another." F. & R. [ECF 38] at 34. However, reliance is not an element of a UTPA claim and therefore need not be pled. *Pearson*, 361 P.3d at 27. And as discussed in greater detail below, although a plaintiff may need to establish reliance under some theories of ascertainable loss, a plaintiff need not do so under the diminished value theory. *See id.* 26–27 (explaining that reliance is "a natural theory to establish the causation of the loss" under a "refund of purchase price" theory of ascertainable loss).

I therefore DECLINE to adopt Judge Acosta's F. & R. as to ascertainable loss and DENY Fred Meyer's Motion to Dismiss [ECF 24] on this point.

### B.     Causation

The ascertainable loss must arise "as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608." Or. Rev. Stat.

§ 646.638(1). The phrase "as a result of" "effectively requires that the unlawful trade practice *cause* the ascertainable loss on which a UTPA plaintiff relies." *Pearson*, 361 P.3d at 27. Notably, the statute does not require, for example, *a customer's reliance on* the unlawful trade practice to cause the loss. It simply requires that the unlawful practice caused the loss.

Some theories of ascertainable loss, however, might require a plaintiff to establish reliance. In *Pearson*, plaintiffs failed to establish a difference in the price of a good with the misrepresented feature versus one without it and therefore could not rely on the diminished value theory of ascertainable loss. *Id.* at 26. Instead, plaintiffs were left to rely on a "refund of purchase price" theory of loss, under which they had to show that they purchased the good believing it had the misrepresented feature that it in fact did not have. *Id.* at 26–27. In other words, plaintiffs had to establish that they *relied* on the misrepresentation.

But where, as here, Plaintiffs may pursue a diminished value theory of ascertainable loss, the analysis is different. The Oregon Supreme Court recently left open the question of whether the diminished value theory requires "reliance to establish the requisite causal connection." *Id.* at 27 n.21. But based on the statute's plain language, the answer to this question seems to be no, and Justice Walters, writing for herself in concurrence, persuasively reasoned that the answer is no. She explained that "[t]he UTPA does not require that a consumer's *purchase* be the 'result of' an unlawful trade practice; it requires that a consumer's ascertainable *loss* be the 'result of' an unlawful trade practice." *Id.* at 37 (Walters, J., concurring); *see also id.* at 27 (majority op.) (explaining that the unlawful trade practice must cause the loss). "When a plaintiff can establish that she purchased an item and that, as a result of a misrepresentation of the item's characteristics, the purchase price of that item was greater than its objective market value, the necessary connection between the unlawful trade practice and the ascertainable loss exists." *Id.*

at 37 (Walters, J., concurring). The Oregon Court of Appeals has cited Justice Walter's concurrence approvingly. *See Scharfstein v. BP West Coast Prods., LLC*, 423 P.3d 757, 769 (Or. Ct. App. 2018). I find Justice Walter's concurrence, which aligns with the text of the statute and dicta from the majority, persuasive.

Here, Plaintiffs have alleged the necessary connection between the unlawful trade practices and their ascertainable loss. First, under subpart (e) of the UTPA, Plaintiffs sufficiently allege that they purchased orange juice and that, as a result of Fred Meyer's misrepresentation that the orange juice's container was redeemable for ten cents, the purchase price was greater than its objective market value. Or. Rev. Stat. § 646.608(1)(e). Additionally, under subpart (s) of the UTPA, Plaintiffs sufficiently allege that they purchased orange juice and that, as a result of Fred Meyer's misrepresentation of the customer's cost for the orange juice (i.e., it would be ten cents cheaper upon return of the empty container), the purchase price was greater than its objective market value. Or. Rev. Stat. § 646.608(1)(s).

I therefore DECLINE to adopt Judge Acosta's F. & R. as to causation and DENY Fred Meyer's Motion to Dismiss [ECF 24] on this point.

### C.   Scienter

Finally, Plaintiffs must adequately plead that Fred Meyer's alleged UTPA violations were "willful." Or. Rev. Stat. § 646.638(1). "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." Or. Rev. Stat. § 646.605(10).  And since this is a putative class action, class members may recover statutory damages only if they suffered an ascertainable loss "as a result of a reckless or knowing use or employment" of an unlawful trade practice. Or. Rev. Stat. § 646.638(8)(a).

In their complaint, Plaintiffs allege as follows:

9 – OPINION AND ORDER

>Fred Meyer's violations of Oregon's Unlawful Trade Practices Act above were willful and reckless because Fred Meyer knew it could not charge customers a 10-cents on exempt beverages and that the exempt beverage containers could not in fact be redeemed for 10 cents, but intentionally chose to add on the 10-cent charge anyway. Fred Meyer recklessly continued to violate Oregon's Unlawful Trade Practices Act by adding on and collecting the 10-cent charge on exempt beverages, even after receiving repeated complaints from plaintiffs and other customers.

Pls.' Am. Compl. [ECF 5] at 14–15.

This is enough—just barely—to survive Fred Meyer's Motion to Dismiss. Plaintiffs allege that Fred Meyer knew it could not do what it did but did so anyway. Plaintiffs also claim that they repeatedly complained but nonetheless, Fred Meyer kept on charging the extra ten cents. Plaintiffs do more than simply allege, "Fred Meyer acted willfully, knowingly, and recklessly." They provide some substance as to how Fred Meyer knew: it was told.

Judge Acosta reasoned that Plaintiffs failed to allege "any facts" as to whether Fred Meyer knew or should have known that its conduct was a violation. F. & R. [ECF 38] at 36. He emphasized that Plaintiffs do not allege that they "attempted to redeem their empty Florida's Natural orange juice containers at any time or complained to management." *Id.* at 38 Thus, according to Judge Acosta, Fred Meyer was not put on notice. *Id.*

I disagree with Judge Acosta's analysis and ultimately, his conclusion. Judge Acosta held Plaintiffs to an inapplicable—and heightened—standard. The UTPA does not place the burden on the customer to put the store on notice of a violation. Rather, the store is potentially liable if it knew its conduct was a violation of the UTPA—no matter the reason for its knowledge. In any event, Plaintiffs *do* allege that they put Fred Meyer on notice. Pls.' Am. Compl. [ECF 5] at 14–15 (alleging Fred Meyer kept violating the law "even after receiving repeated complaints from plaintiffs and other customers").

10 – OPINION AND ORDER

I therefore DECLINE to adopt Judge Acosta's F. & R. as to scienter and DENY Fred Meyer's Motion to Dismiss [ECF 24] on this point.

## CONCLUSION

Upon review, I ADOPT in part Judge Acosta's F. & R. [ECF 38]. Fred Meyer's Motion to Dismiss [ECF 24] is GRANTED in part and DENIED in part. For the reasons discussed above, I reject all of Fred Meyer's objections to Judge Acosta's F. & R. I decline to adopt Judge Acosta's rulings on ascertainable loss, causation, and the requisite scienter. Plaintiffs have plausibly alleged ascertainable loss caused by the alleged unfair trade practices based on a "diminished value" theory. And Plaintiffs have alleged enough to survive a motion to dismiss on the scienter issue. Plaintiffs are GRANTED leave to amend their complaint to add additional factual details as to certain named parties, consistent with Judge Acosta's F. & R.

IT IS SO ORDERED.

DATED this  30th  day of November, 2020.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge